**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| BYTEMARK, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 2:16-cv-00543-JRG/RSP |
| | § | |
| MASABI LTD., | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

**DEFENDANT'S BRIEF IN RESPONSE TO**
**PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

I.	INTRODUCTION ..........................................................................................................1

II.	CLAIM CONSTRUCTION LAW.................................................................................2

III.	ARGUMENT ..................................................................................................................4

A.	U.S. Patent No. 8,494,967 (the '967 Patent)......................................................4

1.	"Possession".................................................................................. 7

2.	"user possesses" ........................................................................... 9

3.	"visual validation display object" ............................................. 10

4.	"previously purchased ticket" ................................................... 11

5.	"request to verify purchase"...................................................... 12

6.	"activation" ................................................................................. 13

7.	"receiving from the user's computer device a request
to verify purchase of a previously purchased electronic
ticket and to obtain a visual validation display object
that confirms that the user possesses the previously
purchased electronic ticket"....................................................... 14

8.	"confirms that the user possesses the previously
purchased electronic ticket"....................................................... 15

9.	"causing an activation" .............................................................. 16

10.	"activation of the purchased electronic ticket by
transmitting to the user's computer device a data
file comprising the visual validation display object"............... 16

11.	Claim Terms and Phrases Not in Need of Separate Construction ........... 17

B.	U.S. Patent No. 9,239,993 (the '993 Patent)...................................................... 17

1.	"validation display object"........................................................ 20

2.	"previously purchased ticket" ................................................... 21

3.	"remote display device".............................................................. 22

4.	"validating the token" ................................................................ 23

5.	Claim Terms and Phrases Not in Need of Separate Construction ........... 24

V.	CONCLUSION................................................................................................................25

i

# INDEX OF AUTHORITIES

## Cases

*AFG Indus., Inc. v. Cardinal IG Co.,*
   239 F.3d 1239 (Fed. Cir. 2001) ................................................................................. 4

*Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.,*
   Case No. 2015-1237 (Fed. Cir. 2016) ........................................................................ 3

*Every Penny Counts, Inc. v. Am. Express Co.,*
   563 F.3d 1378 (Fed. Cir. 2009) ................................................................................. 4

*Home Diagnostics, Inc. v. LifeScan, Inc.,*
   381 F.3d 1352 (Fed. Cir. 2004) ................................................................................. 3

*Markman v. Westview Instruments, Inc.,*
   52 F.3d 967 (Fed. Cir. 1995). ................................................................................ 2, 4

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) ............................................................... 2, 3, 4, 10, 20

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,*
   711 F.3d 1348 (Fed. Cir. 2013) ................................................................................. 3

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,*
   242 F.3d 1337 (Fed. Cir. 2001) ............................................................................ 10, 20

*Sulzer Textil A.G. v. Picanol N.V.,*
   358 F.3d 1356 (Fed. Cir. 2004) ................................................................................. 4

*TNS Media Research, LLC v. Tivo Research & Analytics, Inc.,*
   No. 2014-1668, 2015 WL 5439002, at *22 (Fed. Cir. 2015) ...................................... 4

*Vitronics Corp. v. Conceptronic, Inc.,*
   90 F.3d 1576 (Fed. Cir. 1996) ................................................................................... 3

## I.   INTRODUCTION

Defendant Masabi, LTD. ("Masabi"/"Defendant"), respectfully submits this Brief to assist the Court in construing the disputed claim terms of U.S. Patents No. 8,494,967 (the "'967 Patent") (attached as Exhibit A) and No. 9,239,993 (the "'993 Patent") (attached as Exhibit B).

The asserted claims of the '967 Patent, namely, claims 1, 2, 3, 4, 5, 6, 17, 18, 19, 20, 21, 22, 23 and 34, include several key limitations that, when construed, will be decisive in determining non-infringement and invalidity. The asserted claims of the '993 Patent, namely, claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 22, 23 and 24, include several key limitations that, when construed, will be decisive in determining non-infringement and invalidity. This case presents a large number of claim construction issues for the Court's consideration. There are two reasons for this. First, Bytemark maintains (wrongly) that Masabi infringes 34 claims of the two Patents-in-Suit ("the Patents"). Second, throughout Bytemark's infringement contentions they have repeatedly alleged infringement of elements of the claims based solely on "information and belief" without any attempt to identify any specific aspects of the accused devices and explain how they believe these elements perform the recited elements.  With numerous claims at issue and the lack of specificity in Bytemark's allegations, construction of these terms is necessary in making any determinations with respect to the accused products and the prior art.

Masabi is left without any coherent explanation as to how Bytemark intends to construe its claims or how they believe that the accused products infringe any specific claims.  Masabi, in contrast, has repeatedly detailed its non-infringement position to Bytemark and yet the present litigation continues. Masabi is afforded only its own wild speculation as to how Bytemark intends on interpreting the claim language of the '967 and '993 patents such that claim language

that is clearly directed towards a server verifying a pre-purchased ticket already on a user's device and in response sending a visual validation display object to the user's device can be infringed by a system that delivers an entire ticket packaging including visual validation to a user's device upon purchase.   Thus, Masabi assumes that Bytemark intends on grossly misinterpreting one or more terms of phrases within the claims in order allege infringement well beyond the clear scope of the patents.  Bytemark's reliance on "plain and ordinary meaning" for virtually every claim term and phrase would provide them with the unfettered ability to present vague and undefined allegations of infringement to a jury.   While construing the many disputed terms may seem daunting, a careful review and construction of these claims is required in order for Masabi, and this Court, to have a clear understanding of Bytemark's position on both what their patents supposedly cover as well as how the accused products supposedly infringe these patents. If a proper infringement contention had been provided by Bytemark, such arduous claim construction proceedings could have undoubtedly been avoided.

Defendants follow the mandates of claim construction as set forth by the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) and its progeny that "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."  As such, Defendants respectfully request that this Court adopts Defendant's proposed constructions for the reasons explained hereinafter.

## II.    CLAIM CONSTRUCTION LAW

A patent's scope is limited to its claims, and a claim's construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), aff'd., 116 S. Ct. 1384 (1996).  The correct construction is the one "that stays true to the claim language and most

naturally aligns with the patent's description of the invention." *Phillips*, 415 F.3d at 1316. Words of a claim receive the customary meaning as understood by "a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Phillips, 415 F.3d at 1312-13* (citing *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004) ("customary meaning" refers to the "customary meaning in [the] art field")). The relevant person of ordinary skill "read[s] the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent," including the specification and the prosecution history. *Id.* at 1313.

In construing a claim term, the Court must look to the words of the claim itself; if the claim term has a plain and ordinary meaning, the inquiry ends. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1362 (Fed. Cir. 2013). If, however, the claim term does not have an ordinary meaning, and its meaning is not clear from a plain reading of the claim, courts look to other intrinsic evidence, including "evidence of record, including the written description, the drawings, and the prosecution history." *Id.* at 1360, 1362. The specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Even if the claim terms have plain and ordinary meanings, if the plain and ordinary meaning is in dispute between the parties it is the Court's responsibility to construe them. *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, Case No. 2015-1237 (Fed. Cir., Feb. 29, 2016) The Federal Circuit in *Eon Corp.* clearly states:

> "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." 521 F.3d at 1362. This duty resides with the court because, of course, "the ultimate question of construction [is] a legal question." Teva, 135 S. Ct. at 842; see also O2 Micro, 521 F.3d at 1360 ("[T]he court, not the jury, must

resolve that dispute." (citing Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd 517 U.S. 370 (1996))). Thus, "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." O2 Micro, 521 F.3d at 1361. (Id. at *6-7)

Thus, a district court's duty at the claim construction stage is, simply, the one that we described in O2 Micro and many times before: to resolve a dispute about claim scope that has been raised by the parties. O2 Micro, 521 F.3d at 1360 ("When the parties raise an actual dispute regarding the proper scope of [the] claims, the court, not the jury, must resolve that dispute."); AFG Indus., Inc. v. Cardinal IG Co., 239 F.3d 1239, 1247 (Fed. Cir. 2001) ("It is critical for trial courts to set forth an express construction of the material claim terms in dispute."); Sulzer Textil A.G. v. Picanol N.V., 358 F.3d 1356, 1366 (Fed. Cir. 2004) ("[T]he district court must instruct the jury on the meanings to be attributed to all disputed terms used in the claims in suit so that the jury will be able to 'intelligently determine the questions presented.'" (citation omitted)); see also Every Penny Counts, Inc. v. Am. Express Co., 563 F.3d 1378, 1383 (Fed. Cir. 2009) ("[T]he court's obligation is to ensure that questions of the scope of the patent claims are not left to the jury. In order to fulfill this obligation, the court must see to it that disputes concerning the scope of the patent claims are fully resolved." (citation omitted)); TNS Media Research, LLC v. Tivo Research & Analytics, Inc., No. 2014-1668, 2015 WL 5439002, at *22 (Fed. Cir. Sept. 16, 2015) ("[W]hen a determinative claim construction dispute arises, a district court must resolve it."). (Id. at *8)

If the intrinsic record is ambiguous, courts may rely on extrinsic evidence, "consist[ing] of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." Phillips, 415 F.3d at 1317 (internal quotation marks, citations omitted). Dictionaries—especially technical dictionaries—help courts "better understand the underlying technology" and the accepted meanings of particular terms to those skilled in the art. Id. at 1318.

## III.   ARGUMENT

### A.   U.S. Patent No. 8,494,967 (the '967 Patent)

The '967 patent is directed towards "a method by a server system for obtaining visual validation of the possession of a purchased electronic ticket on a user's computer device for presentation to a ticket taker." (Ex. A at claim 1, Abstract)  The specification of the '967 patent

describes numerous embodiments, however only one is reflected in the claims as issued.  This embodiment is described as:

> In one embodiment of the invention, the user purchases a ticket from an on-line website. The website sends to the user's device a unique number, referred to as a token. The token is also stored in the ticketing database. When the time comes to present the ticket, the venue can select what visual indicator will be used as the designated validation visual object. The user can then request the validation visual object. The user's device will have an application that launches a user interface. The user can select "validate" or some other equivalent command to cause the application to fetch and download from the  ticketing system a data object referred to herein as a ticket payload, which includes a program to run on the user's device. (Ex. A at col 2, ln 45-57)

The claim language of the '967 clearly and unmistakably follows precisely the described process wherein the <u>purchase of the electronic ticket </u>and <u>receipt of the token on the user's device</u> is a <u>separate</u> and distinct process from the request to verify and delivery of the ticket payload. Independent claim 1 clearly recites this process:

> [a]   A method by a server system for obtaining visual validation of the possession of a purchased electronic ticket on a user's computer device for presentation to a ticket taker comprising:

> [b] receiving from the user's computer device a request to verify purchase of a previously purchased electronic ticket

> [c] and to obtain a visual validation display object that confirms that the user possesses the previously purchased electronic ticket

> [d] for utilization of a service monitored by the ticket taker,

> [e] the visual validation display object configured to be readily recognizable visually by the ticket taker;

[f] receiving from the user's computer device a token associated with the received request;

[g] determining whether a token associated with the purchased electronic ticket has been stored in a data record associated with the received request, and if it has, whether the received token is valid; and

[h] in dependence on the determination that the received token is valid, causing an activation of the purchased electronic ticket

[i] by transmitting to the user's computer device a data file comprising the visual validation display object

[j] that causes upon visual recognition by the ticket taker, the user to be permitted to utilize the service monitored by the ticket taker. (Ex. A, claim 1)

Figure 12 is described as a "[f]lowchart for ticket activation process" and clearly describes this multi-step process.  The activation process depicts the recited interaction between the mobile device and the server wherein after an authentication key is sent from the server to the mobile device, and upon an authentication request from the mobile device to the server, a ticket payload is sent from the server to the mobile device:

Figure 12



Ex. A – Figure 12

In an effort to sidestep Defendant's clearly presented and compelling non-infringement position, Plaintiffs seek to avoid any pertinent construction by relying on the "plain and ordinary meaning" of virtually every term and phrase.  Although the clear language of the claims when construed in context <u>would not read on a single transaction purchase of an electronic ticket containing a visual validation display element</u>, a failure to construe the claims would allow Plaintiffs to continue to ignore Defendants non-infringement position.  If allowed, this would afford Plaintiffs the opportunity to continue this lawsuit without the Defendants being provided a clear understanding of their position on the claim language or a clear position on how they contend the accused products infringe the patent.  This is not acceptable.

Masabi courteously requests the following terms be construed in accordance with Defendant's proposed constructions.

### 1.      "Possession"

| Defendant's Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| "local physical presence on a local device" or "stored on a user's computer device" | No construction necessary – plain and ordinary meaning |

Defendant's proposed construction is consistent with the plain language of the claim, and the essence of the invention as described in the specification.  As explained above, the system of the '967 Patent specifically recites a method for "obtaining visual validation of the possession of a purchased electronic ticket on a user's computer device." (Ex. A, Claim 1).  [emphasis added] The Plaintiff's proposes no definition at all but merely relies on the "plain and ordinary meaning".  However, Plaintiff clearly disputes the Defendant's proposed construction as they have failed to agree with Defendant's proposed construction.  It is well understood that the term "possession" may comprise the definition encompassed by the Defendant's construction: namely "Visible power or control over something, as distinct from lawful ownership; holding or occupancy as distinct from ownership" (Ex. C, Oxford Dictionary Online).  However, it is equally understood that the term "possession" may be also broadly construed to cover the mere state of "ownership" (*Id*.).  From the context of the claim language, it is clear that the term "possession" is utilized in the context of "possession of a purchased electronic ticket on a user's computer device" (Ex. A, Claim 1) which is clearly in line with Defendant's proposed construction of "local physical presence on a local device" or "stored on a user's computer device" and counter to the overly broad definition of mere ownership.

Since the Plaintiff have provided no details as to their proposed construction absent disputing the Defendant's logical and contextually based proposed construction, and since Plaintiff has similarly provided no direction from their factually devoid infringement contentions, it is imperative that the Court construe this term such that the Defendant is afforded the opportunity to make reasonable and rational responses on the subjects of non-infringement and invalidity without the unreasonable requirement of speculation as to Plaintiff's proposed construction.  Therefore, since Defendant's proposed construction is clearly in dispute,

8

Defendant's proposed construction is the only proposed construction presented before this Court, and is the most reasonable construction taken in light of the context of the claims; it should be adopted by this Court.

      **2.**      **"user possesses"**

| Defendant's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "user has a physical presence on a local device"<br><br>or<br><br>"stored on a user's computer device" | No construction necessary –ordinary meaning |

     Defendant's proposed construction is consistent with the plain language of the claim, and the essence of the invention as described in the specification.  In each independent claim of the '967 patent the claim language discusses the server "receiving from the user's computer device a request" to "obtain a visual validation display object that confirms that the <u>user possesses</u> the previously purchased electronic ticket" (Ex. A, Claims 1, 17, and 18).  As was discussed above, the term possess may encompass either physical presence or mere ownership.  From the context of the claim language, it is clear that the term "user possesses" is utilized in the context of "possession of a purchased electronic ticket <u>on a user's computer device"</u> (Ex. A, Claim 1) which is clearly in line with Defendant's proposed construction of "user has a physical presence on a local device" or "stored on a user's computer device" and counter to the overly broad definition of mere ownership.

     Since Plaintiff has provided no details as to their proposed construction absent disputing the Defendant's logical and contextually based proposed construction, and since Plaintiff's have equally provided no direction from their factually devoid infringement contentions, it is imperative that the Court construe this term such that the Defendant is afforded the opportunity to make reasonable and rational responses on the subjects of non-infringement and invalidity

without the unreasonable requirement of speculation as to Plaintiff's proposed construction. Therefore, since Defendant's proposed construction is clearly in dispute, Defendant's proposed construction is the only proposed construction presented before this Court, and is the most reasonable construction taken in light of the context of the claims; it should be adopted by this Court.

### 3.   "visual validation display object"

| Defendant's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "any object visually present on a user's device that may be utilized for validation purposes"<br><br>or<br><br>"a validating visual object is one that is readily recognizable from human observation" | Data, computer code, or command that facilitates the display on the customer's device of an animation or other human-perceptible visual image sufficient to enable a ticket taker to instantaneously visually recognize and verify the ticket |

A cardinal rule of patent law forbids importing limitations from the specification into patent claims. (*Phillips v. AWH Corp.*, 415 F.3d 1303, 1319-20 (Fed. Cir. 2005) (en banc) (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001))).   Plaintiff's proposed construction imports numerous limitations from the specification: "data, computer code, or command" and "animation" in direct contradiction to the teachings of *Phillips.*  Defendant's proposed construction, in contrast, follows the very definition of the terms utilized when considered in context of the claim language.  The term "visual" is defined as relating to vision or sight (Ex. D, Oxford Dictionary Online).  The term "validation" is defined as the action of making or declaring something legally or officially acceptable (Ex. E, Oxford Dictionary Online).  The term "display" is defined as to show on a screed (Ex. F, Oxford Dictionary Online).  Therefore, Defendant's proposed construction "any object visually present on a user's device that may be utilized for validation purposes" is directly in line with the

10

dictionary definitions of the terms without unnecessarily importing limitations from the specification.   Defendant's proposed construction is the most reasonable construction taken in light of the context of the claims, and should be adopted by this Court.

### 4.    "previously purchased ticket"

| Defendant's Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| "a ticket purchased in a discreet time period and discreet operation separate and prior to the request for validation" | No construction necessary – plain and ordinary meaning |

Defendant's proposed construction is consistent with the plain language of the claim, and the essence of the invention as described in the specification.  As explained above, the system of the '967 Patent specifically recites a method "by a <u>server system</u>" for "obtaining visual validation of the possession of a purchased electronic ticket <u>on a user's computer device</u>", the server system "receiving from the user's computer device a request" "to obtain a visual validation display object that confirms that the user possesses the <u>previously purchased electronic ticket</u>." (Ex. A, Claim 1).  The Plaintiff proposes no definition at all but merely relies on the "plain and ordinary meaning".  However, Plaintiff clearly disputes the Defendant's proposed construction as they have failed to agree with Defendant's proposed construction.

The very definition of "previously" is at a previous or earlier time (Ex. G, Oxford Dictionary Online).  In addition, the claim language of the '967 patent is directed towards a server system providing validation of "possession of a purchased electronic ticket on a user's computer device" (Ex. A, Claim 1).  It is illogical and contradictory for the claim language of the '967 patent to be construed as encompassing purchase and delivery of the visual validation display element in a single transaction.  For a server to validate a purchased ticket "on a user's device", it is a logical imperative that the pre-purchased electronic ticket is ON the user's device prior to the user's device requesting the visual validation display object from the server.  Due to

Plaintiff's failure to provide details as to their proposed construction absent disputing the Defendant's logical and contextually based proposed construction, and due to Plaintiff's failure to provide direction from their factually devoid infringement contentions, Defendants are forced to seek construction of a term whose plain and ordinary meaning is precisely encompassed by Defendant's proposed construction.

It is imperative that the Court construe this term such that the Defendant is afforded the opportunity to make reasonable and rational responses on the subjects of non-infringement and invalidity without the unreasonable requirement of speculation as to Plaintiff's proposed construction.   Therefore, since Defendant's proposed construction is clearly in dispute, Defendant's proposed construction is the only proposed construction presented before this Court, and is the most reasonable construction taken in light of the context of the claims; it should be adopted by this Court.

### 5. "request to verify purchase"

| Defendant's Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| "request sent from a user device to a server seeking verification of a ticket purchased in a discreet time period and discreet operation separate and prior to the request for validation" | No construction necessary –ordinary meaning |

As stated above, each independent claims of the '967 patent recites a server system/ computer system/ one or more computers that receive from the user's computer device a "request to verify purchase" of a "previously purchased electronic ticket" (Ex. A, Claims 1, 17, 18).  Each of these claims additionally recite the server system/ computer system/ computer determining whether the "token associated with the purchased ticket"  "has been stored in a data record" on the server system/ computer system/ computer in order to determine validity.  It is beyond dispute or contention that the phrase "has been stored" indicates a transaction prior to the request

to verify and determine validity.   Defendant's proposed construction is the only logical and reasonable interpretation of a 'request to verify purchase" as it properly defines the "request to verify purchase" as a request that as a separate and discreet process from the initial ticket purchase.

Defendant's proposed construction is the proper one because it is consistent with the plain and ordinary meaning of "request to verify purchase", the specification of the '967 Patent, and the claims of the '967 Patent.

### 6.   "activation"

| Defendant's Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| "server directed control of visual validation display object on the users device" | No construction necessary –ordinary meaning |

Independent claims 1, 17 and 18 each recite a server system/ computer system/ computer "causing an activation by transmitting to the user's computer device a data file the visual validation display object" / "cause an activation of the purchased electronic ticket by transmitting to the user's computer device a data file comprising the visual validation display object" (Ex. A, claims 1, 17, 18).   The dictionary definition of "activation" is defined as the action or process of making something active or operative (Ex. H, Oxford Dictionary Online).   Defendant's proposed construction is required to properly define the role of the server system/ computer system/ computer in the "activation" process.   It is reasonable to assume the Plaintiffs intend on an alternate and as yet undefined construction, otherwise they would have agreed to Defendant's proposed construction.   Accordingly, Defendant's proposed construction is the only logical and reasonable interpretation of a 'activation" as it properly defines the interaction between the server and the user's device that is the subject matter of this action.

 Defendant's proposed construction is therefore the most reasonable construction.

7.      **"receiving from the user's computer device a request to verify purchase of a previously purchased electronic ticket and to obtain a visual validation display object that confirms that the user possesses the previously purchased electronic ticket"**

| Defendant's Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| "Server receiving request from mobile device to confirm a prior purchase of ticket from a discreet prior operation and in response to confirmation sending a visual validation display object to users device" | Plain and ordinary meaning except as to the phrase "visual validation display object" |

Independent claims 1 and 17 each recite a method by a server system/ a computer system to perform a method… comprising "receiving from the user's computer device a request to verify purchase of a previously purchased electronic ticket and to obtain a visual validation display object that confirms that the user possesses the previously purchased electronic ticket" (Ex. A, claims 1 and 17). It is clear within the context of the claim language that the "server system"/"computer" receives the request from the mobile device to verify a previous purchase of a ticket and to obtain a "visual validation display object" that confirms the user is in possession of the previously purchased ticket. Defendant's proposed construction clearly and unequivocally defines this phrase in clear and simple terms and is consistent with the context of the claims. The proposed construction includes the proposed definitions of "possesses" and "previously purchased electronic ticket" as were set forth in preceding arguments.    It is unclear why Plaintiffs object to this proposed construction absent an intent to construe out of context the terms "possesses" and "previously purchased electronic ticket" in order to expand their claim scope to encompass a single transaction purchase of a ticket including a visual validation display object. The construction of this phrase may have been avoided had Plaintiffs properly provided a detailed and responsive infringement contention. The Plaintiffs clearly object to Defendant's reasonable and contextually accurate construction of this phrase.    Defendant's proposed

14

construction is the proper one because it is consistent with the plain and ordinary meaning of the phrase and is contextually accurate.  Defendant's proposed construction is therefore the most reasonable construction.

### 8. "confirms that the user possesses the previously purchased electronic ticket"

| Defendant's Proposed Construction | Plaintiffs' Proposed Construction |
| --- | --- |
| "Validates that an electronic ticket stored on the users device has been properly purchased in a previous discreet operation" | No construction necessary –ordinary meaning |

Independent claims 1 and 17 each recite a method by a server system/ a computer system to perform a method… comprising "receiving from the user's computer device a request … that confirms that the user possesses the previously purchased electronic ticket" (Ex. A, claims 1, 17) [emphasis added] It is clear within the context of the claim language that the "server system"/"computer" receives the request from the mobile device to confirm the user is in possession of the previously purchased ticket.  Defendant's proposed construction clearly and unequivocally defines this phrase in clear and simple terms and is consistent with the context of the claims.  The proposed construction includes the proposed definitions of "possesses" and "previously purchased electronic ticket" as were set forth in preceding arguments.   As stated above, it is unclear as to why the Plaintiffs would object to Defendant's proposed construction absent an intent to construe the language to read on a single purchase transaction.  The Plaintiffs clearly object to Defendant's reasonable and contextually accurate construction of this phrase.  Defendant's proposed construction is the proper one because it is consistent with the plain and ordinary meaning of the phrase and is contextually accurate.  Defendant's proposed construction is therefore the most reasonable construction.

9.      **"causing an activation"**

| Defendant's Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| "Transmitting a file to the users device containing a visual validation display object that is immediately displayed without user interaction" | No construction necessary –ordinary meaning |

Independent claims 1, 17 and 18 each recite a server system/ computer system/ computer

"causing an activation of the purchased electronic ticket by transmitting to the user's computer

device a data file the visual validation display object" / "cause an activation of the purchased

electronic ticket by transmitting to the user's computer device a data file comprising the visual

validation display object" (Ex. A, claims 1, 17, 18). [emphasis added] The dictionary definition

of "activation" is defined as the action or process of making something active or operative (Ex.

H, Oxford Dictionary Online).   Defendant's proposed construction is the only logical and

reasonable interpretation of a 'causing an activation" as it properly defines the interaction

between the server and the user's device that is the subject matter of this action.

   Defendant's proposed construction is therefore the most reasonable construction.

10.      **"activation of the purchased electronic ticket by
transmitting to the user's computer device a data
file comprising the visual validation display object"**

| Defendant's Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| "Transmitting a file to the users device containing a visual validation display object that is immediately displayed without user interaction" | No construction necessary – plain and ordinary meaning |

Independent claims 1, 17 and 18 each recite a server system/ computer system/ computer

"causing an activation of the purchased electronic ticket by transmitting to the user's computer

device a data file the visual validation display object" / "cause an activation of the purchased

electronic ticket by transmitting to the user's computer device a data file comprising the visual

validation display object" (Ex. A, claims 1, 17, 18). [emphasis added] The dictionary definition of "activation" is defined as the action or process of making something active or operative (Ex. H, Oxford Dictionary Online).   The very language of the claim states "activation… by transmitting to the user's computer device".   Defendant's proposed construction is the only logical and reasonable interpretation of "activation of the purchased electronic ticket by transmitting to the user's computer device a data file comprising the visual validation display object" as it properly defines the interaction between the server and the user's device that is the subject matter of this action.

Defendant's proposed construction is therefore the most reasonable construction.

### 11.    Claim Terms and Phrases Not in Need of Separate Construction

The Defendants believe that a construction of the previously discussed terms and phrases will render the construction of the following terms and phrases redundant and therefore do not require separate construction: ***"the visual validation display object configured to be readily recognizable visually by the ticket taker"***;   ***"that causes upon visual recognition by the ticket taker"***; ***"token associated with the purchased ticket"***; ***"token associated with the received request"***; and   ***"determination that the received token is valid"***.

### B.    U.S. Patent No. 9,239,993 (the '993 Patent)

The '993 patent is directed towards "a method performed by a computer system for displaying visual validation of the possession of a previously purchased ticket." (Ex. B, claim 1, Abstract)  The specification of the '993 patent describes numerous embodiments, however only one is reflected in the claims as issued.  This embodiment is described as:

In one embodiment of the invention, the user purchases a ticket from an on-line website.

The website sends to the user's device a unique number, referred to as a token. The token

is also stored in the ticketing database. When the time comes to present the ticket, the

venue can select what visual indicator will be used as the designated validation visual

object. The user can then request the validation visual object. The user's device will have

an application that launches a user interface. The user can select "validate" or some other

equivalent command to cause the application to fetch and download from the  ticketing

system a data object referred to herein as a ticket payload, which includes a program to

run on the user's device. (Ex. B at col 2, ln 49-61)

The claim language of the '993 clearly and unmistakably follows precisely the described

process wherein the purchase of the electronic ticket and receipt of the token on the user's device

is a separate and distinct process from the request to verify and delivery of the ticket payload.

Independent claim 1 clearly recites this process:

[a] A method performed by a computer system for displaying visual validation of the

possession of a previously purchased electronic ticket for utilization of a service

monitored by a ticket taker comprising:

[b] transmitting a token associated with a previously purchased electronic ticket to a

remote display device,

[c]  wherein the token is a unique alphanumeric string, and

[d] wherein a copy of the unique alphanumeric string is stored on a central computer

system;

[e] validating the token

[f] by matching the token transmitted to the remote display device to the copy of the

unique alphanumeric string stored on the central computing system

[g] to provide a ticket payload to the remote display device;

18

[h] securing a validation display object prior to transmission to provide a secured

validation display object;

[i] transmitting to the remote display device a secured validation display object associated

with the ticket payload; and

[j] enabling the remote display device to display the secured validation display object

upon validation of the token for visual recognition by the ticket taker or

[k] preventing the remote display device from displaying the secured validation display

object in the event that the token is not validated.

Figure 12 is described as a "[f]lowchart for ticket activation process" and clearly

describes this multi-step process.  The activation process depicts the recited interaction between

the mobile device and the server wherein after an authentication key is sent from the server to the

mobile device, and upon an authentication request from the mobile device to the server, a ticket

payload is sent from the server to the mobile device.

In an effort to sidestep Defendant's clearly presented and compelling non-infringement

position, Plaintiffs seek to avoid any pertinent construction by relying on the "plain and ordinary

meaning" of virtually every term and phrase.  Although the clear language of the claims when

construed in context would not read on a single transaction purchase of an electronic ticket

containing a visual validation display element, a failure to construe the claims would allow

Plaintiffs to continue to ignore Defendants non-infringement position.  If allowed, this would

afford Plaintiffs the opportunity to continue this lawsuit without the Defendants being provided a

clear understanding of their position on the claim language or a clear position on how they

contend the accused products infringe the patent.  This is not acceptable.

### 1.    "validation display object"

| Defendant's Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| "any object present on a user's device that may be utilized for validation purposes" | Data, computer code, or command that facilitates the display on the customer's device of an animation or other human-perceptible visual image sufficient to enable a ticket taker to instantaneously visually recognize and verify the ticket |

A cardinal rule of patent law forbids importing limitations from the specification into patent claims. (*Phillips v. AWH Corp.*, 415 F.3d 1303, 1319-20 (Fed. Cir. 2005) (en banc) (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001))).    Plaintiff's proposed constructions import numerous limitations from the specification: "visual image", "data, computer code, or command" and "animation" in direct contradiction to the teachings of *Phillips*.  Furthermore, the '993 patent is a continuation of the application that issued as the '967 patent and yet Plaintiffs chose to utilize the term "validation display object" in the '993 patent rather than "visual validation display object" as utilized in the '967 patent.  Despite this, Plaintiff's proposed construction attempts to insert the term "visual validation' back in to the claim.  Defendant's proposed construction, in contrast, follows the very definition of the terms utilized when considered in context of the claim language.  The term "validation" is defined as the action of making or declaring something legally or officially acceptable (*Id.*).  The term "display" is defined as to show on a screed (*Id.*).  Therefore, Defendant's proposed construction "any object present on a user's device that may be utilized for validation purposes" is directly in line with the dictionary definitions of the terms without unnecessarily importing limitations from the specification.   Defendant's proposed construction is the most reasonable construction taken in light of the context of the claims, and should be adopted by this Court.

### 2.    "previously purchased ticket"

| Defendant's Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| "a ticket purchased in a discreet time period and discreet operation separate and prior to the request for validation" | No construction necessary – ordinary meaning |

Defendant's proposed construction is consistent with the plain language of the claim, and the essence of the invention as described in the specification.  The system of the '993 Patent specifically recites a computer system that transmits "a token associated with a <u>previously purchased electronic ticket</u> to a remote display device and stores a copy "on a central computer system" and then validates the token by "matching the token transmitted to the remote display device to the copy of the unique alphanumeric string stored on the central computing system to provide a ticket payload to the remote display device (Ex. B, Claims 1 and 8).  The Plaintiff's proposes no definition at all but merely relies on the "plain and ordinary meaning".  However, Plaintiff clearly disputes the Defendant's proposed construction as they have failed to agree with Defendant's proposed construction.  Thus, the term should be construed.

The very definition of "previously" is at a previous or earlier time (Ex. G, Oxford Dictionary Online).  In addition, the claim language of the '993 patent undeniably recites a central computer system that sends a token to the mobile device and stores a copy in one transaction and validates the token by comparing the mobile phone token to the copy stored on the central computer system (Ex. B, Claims 1 and 8).  It is illogical and contradictory for the claim language of the '993 patent to be construed as encompassing purchase and delivery of the validation display element in a single transaction.  There would be no conceivable purpose for a central computer system to match tokens it had just sent and stored a copy of if purchase and validation was performed in a single operation.  It is unclear as to why the Plaintiffs would oppose Defendant's proposed construction absent an attempt to construe the claim language of

the '993 patent to read on a single purchase/delivery of an electronic ticket.  Due to Plaintiff's failure to provide details as to their proposed construction, Defendants are forced to seek construction of a term whose plain and ordinary meaning is precisely encompassed by Defendant's proposed construction.

It is imperative that the Court construe this term such that the Defendant is afforded the opportunity to make reasonable and rational responses on the subjects of non-infringement and invalidity without the unreasonable requirement of speculation as to Plaintiff's proposed construction.   Therefore, since Defendant's proposed construction is clearly in dispute, Defendant's proposed construction is the only proposed construction presented before this Court, and is the most reasonable construction taken in light of the context of the claims, it should be adopted by this Court.

### 3.      "remote display device"

| Defendant's Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| "a piece of electronic equipment located in a remote location from the ticketing server and containing an electronic display" | No construction necessary – ordinary meaning |

The term "remote display device" and even the term "remote display" is not mentioned or discussed anywhere in the specification of the '993 patent with the exception of the claims.  Yet Plaintiff proposes the "plain and ordinary meaning" should be applied.  As mentioned above, the '993 patent is a continuation of the application that issued as the '967 patent and yet Plaintiffs chose to utilize the term "remote display device" in the '993 patent rather than "user's computer device" as utilized in the '967 patent.  It seems apparent that Plaintiffs sought a variation in scope upon filing the '993 patent as a continuation of the '967 patent.  However, the Defendant is afforded no clues or details as to what, if any, variation in scope the Plaintiffs intended or possibly achieved.  Plaintiffs have provided no proposed construction nor can any be determined

from the specification or their factually devoid infringement contentions.   Plaintiffs should not leave the Defendants, this Court, and a potential jury to proceed in this case with mere speculation as to what is encompassed by their undefined term.

Defendant's proposed construction, in contrast, utilizes simple, basic, and easy to understand language to provide some definition of a "remote display device" to facilitate an intelligent approach for both sides in this litigation.   Therefore, since Defendant's proposed construction is clearly in dispute, Defendant's proposed construction is the only proposed construction presented before this Court, and is the most reasonable construction taken in light of the context of the claims, it should be adopted by this Court.

4.   "validating the token"

| Defendant's Proposed Construction | Plaintiffs' Proposed Construction |
| --- | --- |
| "comparing the unique character string associated with a purchased ticket generated during a discreet and prior operation (wherein the purchase is effectuated and a token is sent to the mobile device) with a unique character string stored on the server" | No construction necessary – ordinary meaning |

Defendant's proposed construction again provides a broad and reasonable interpretation of the phrase "validating the token" while providing necessary context by including reference to the transactional separation between ticket purchase and token validation.   The proposed construction preserves the context of the claim language while properly providing a definition without narrowing the claims.   As set forth above, the claim language of the '993 patent undeniably recites a central computer system that sends a token to the mobile device and stores a copy in one transaction and validates the token by comparing the mobile phone token to the copy stored on the central computer system (Ex. B, Claims 1 and 8).   It is illogical and contradictory for the claim language of the '993 patent to be construed as encompassing purchase and delivery

of the validation display element in a single transaction.  There would be no conceivable purpose for a central computer system to match tokens it had just sent and stored a copy of if purchase and validation was performed in a single operation.  It is unclear as to why the Plaintiffs would oppose Defendant's proposed construction absent an attempt to direct claim language of the '993 patent to read on a single purchase/delivery of an electronic ticket.  Due to Plaintiff's failure to provide details as to their proposed construction, due to Plaintiff's disputing the Defendant's logical and contextually based proposed construction, and due to Plaintiff's failure to provide direction from their factually devoid infringement contentions, Defendants are forced to seek construction of a term whose plain and ordinary meaning is precisely encompassed by Defendant's proposed construction.

Therefore, since Defendant's proposed construction is clearly in dispute, Defendant's proposed construction is the only proposed construction presented before this Court, and is the most reasonable construction taken in light of the context of the claims, it should be adopted by this Court.

### 5.      Claim Terms and Phrases Not in Need of Separate Construction

The Defendants believe that a construction of the previously discussed terms and phrases will render the construction of the following terms and phrases redundant and therefore do not require separate construction: **"*for visual recognition by the ticket taker*"; "*token associated with the previously purchased ticket*"; "*request to verify purchase*"; "*transmitting a token associated with a previously purchased electronic ticket*"; "*transmitting to the remote display device a secured validation display object associated with the ticket payload*"; and "*a request to verify the purchase of the previously purchased electronic ticket*"**.

# V.    CONCLUSION

For the foregoing reasons, Defendants request that this Court adopt Defendant's proposed constructions of the disputed claim terms.


DATED:  May 3, 2017                        Respectfully submitted,

                                           FISHMAN STEWART PLLC

                                           /s/ Douglas P. LaLone
                                           Douglas P. LaLone (P45751)
                                           Thomas E. Donohue (P57089)
                                           Fishman Stewart PLLC
                                           39533 Woodward Avenue, Suite 140
                                           Bloomfield Hills, MI 48304
                                           Tel: (248) 594-0600
                                           Fax: (248) 594-0610
                                           DLaLone@fishstewip.com


                              By:          /s/ Kasia Brozynski (24036277)
                                           Kasia Brozynski
                                           Texas Bar No. 24036277
                                           Antonio S. Devora
                                           Texas State Bar No. 24074133
                                           Sorana G. Ban
                                           Texas State Bar No. 24061520
                                           901 Main Street, Suite 4600
                                           Dallas, Texas 75202
                                           (214) 245-3068 Telephone
                                           (214) 245-3097 Fax
                                           Email: kbrozynski@shannongracey.com
                                           adevora@shannongracey.com
                                           sban@shannongracey.com

                                           *Attorneys for Defendant Masabi Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2017 I electronically filed the foregoing with the Clerk of

the Court via CM/ECF, which will send notifications of such filing via electronic mail to all

counsel of record.

/s/ Douglas P. LaLone

Douglas P. LaLone

DLaLone@fishstewip.com

Fishman Stewart PLLC

39533 Woodward Avenue, Suite 140

Bloomfield Hills, MI 48304

(248) 594-0600
