# EXHIBIT E



39533 Woodward Ave., Ste. 140
Bloomfield Hills, Michigan 48304
Tel: (248) 594-0600
Fax: (248) 594-0610

**Douglas LaLone**
**(248) 593-3344**
**dlalone@fishstewip.com**

April 7, 2017

*Via E-mail*

Mr. Darius Keyhani
Meredith Keyhani PLLC
125 Park Avenue, 25th Floor
New York, NY 10017

      Re:    ***Bytemark, Inc. v. Masabi Ltd.***
             *Case No. 2:16-cv-00543*
             **Rule 11 Sanctions Notice**

Dear Counsel:

      We are writing pursuant to the "safe harbor" requirements of Fed. R. Civ. P. 11(c)(2). Specifically, we are writing regarding to Bytemark's claims that Masabi's Transit Ticket System infringes the claims of U.S. Pat. Nos. 8,494,967 and 9,239,993, hereinafter the '967 and the '993 patents, respectively. There is simply no good faith basis in the fact or, law, per Fed. R. Civ. P. 11(b), to assert that the '967 or '993 patents cover the accused Masabi Transit Ticket System.

      Bytemark's infringement position has been puzzling from the outset. Bytemark began this suit in May 2016 by alleging infringement of "at least claims 1, 17 and 18" of the '967 patent and "at least claim 1 of the '993 patent." After Masabi filed a Rule 12(b)6 motion to dismiss this baseless suit, the premises of which was that the Complaint was defective on its face, Bytemark responded and surprisingly expanded its allegations in September 2016 to now include asserted claims 1-6, 17-23 and 34 of the '967 patent, and claims 1-17, and 22-24 of the '993 patent. Bytemark expanded its list of asserted claims without any basis whatsoever and has failed to provide any evidence supporting the alleged infringement of the initial 4 claims, much less the 34 claims it is currently enforcing against Masabi. The assertion of additional patent claims against Masabi indeed was in bad faith. Particularly in view of the lack of evidence Bytemark has produced to date, the prior art we have produced to Bytemark illustrating invalidity of the asserted claims, and the production by Masabi of its process maps proving the accused Transit Ticket System does not infringe any asserted claim.

      Bytemark's Infringement Contentions (attached) did not reveal a good-faith position. Initially we note that your contentions were due August 16, 2016 and we agreed to give you additional time until September 16, 2016 to have them completed. [See DN11-1] This



Darius Keyhani, Esq.
April 7, 2017
Page 2

additional time should have afforded Bytemark sufficient time to put forth infringement contentions that were compliant with P.R. 3-1 & 3-2. They were not.

For example, this District's Local Patent Rules required Bytemark to provide infringement "chart[s] identifying specifically where each element of each asserted claim is found within each Accused Instrumentality[.]" P.R. 3-1(c). Thus, Bytemark's infringement contentions <u>must</u> have "set forth 'particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patent [claims] themselves.'" *Connectel, L.L.C. v. Cisco Systems, Inc.*, 391 F. Supp. 2d 526, 527-28 (E.D. Tex. 2005) (quoting *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004)). Further, a party must "be as specific as possible in its contentions." *SmartPhone Techs. LLC v. HTC Corp.*, No. 6:10cv580 LED-JDL, 2012 U.S. Dist. Lexis 68049, 2012 WL 1424173, at *3 (E.D. Tex. Mar. 16, 2012). Accordingly, "a party may not rely on vague, conclusory language" in its infringement contentions. *Zix Corp. v Echoworx Corp.*, No. 2:15 –cv- 1271-JRG, 2016 U.S. Dist. Lexis 86359, *2 (Judge Gilstrap).

Here, Bytemark grossly failed to provide infringement "charts identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." P.R. 3-1(c). In particular Bytemark's September 16, 2016 Infringement Contentions repeatedly are based on 'information and belief" – this falls short of Bytemark's requirement to "set forth particular theories of infringement with sufficient specificity to provide defendants with notice of infringement." Masabi has been left to speculate on how Bytemark intends to apply the elements of each claim to the Accused Products which is precisely the scenario that P.R. 3.1 was written to avoid.

Bytemark has asserted two patents and has accused two of Masabi's systems of infringement. Thus, Bytemark has served Masabi with four (4) defective infringement contention claim charts. Those charts were referenced as exhibits A-D in your September 16, 2016 Infringement Contentions as follows:

    Exhibit A – '967 Patent in view of the Nice gomobile product

        You stated 29 assertions of elements relegated to on information and belief.

    Exhibit B – '967 Patent in view of the mticket MBTA product

        You stated 29 assertions of elements relegated to on information and belief.

    Exhibit C – '993 Patent in view of the Nice gomobile product

        You stated 24 assertions of elements relegated to on information and belief.



Darius Keyhani, Esq.
April 7, 2017
Page 3

Exhibit D – '993 Patent in view of the mticket MBTA product

You stated 24 assertions of elements relegated to on information and belief.

To exemplify the bad faith behavior by Bytemark, we direct you to the above referenced instances of "information and belief" in your contention charts that are contradicted by the limited references to the Defendant's websites. In just one particular example, Plaintiff asserts as their basis for alleging infringement of claim 1 of the '967 patent that the accused product discloses:

receiving from the user's computer device a token associated with the received request;

And in support you merely allege:

On information and belief, purchasing a ticket, **activating a ticket**, and obtaining a visual validation display object **are on-line transactions involving a Masabi server system**. (Exhibit A, pg. 5; Exhibit B, pg. 6)

However, in the SAME chart for claim 1, Plaintiff's include the following snapshot of Masabi's Nicebus website:

> **If I lose cell phone service while trying to use my ticket, will my mobile ticket still work?**
>
> Mobile tickets do not need cell phone or wifi service to be displayed; however, service or wifi is needed to purchase a ticket. **You must purchase your ticket before boarding the bus.**
>
> If you lose cell phone service after boarding the bus, you will still be able to activate and display purchased tickets. You will not be able to make any purchases or other changes until your cell phone or wifi service is restored.

It is facially inconceivable that Plaintiffs actually hold "information and belief" that at a minimum the "activating a ticket" is "on-line transactions involving the Masabi server system" as alleged when their own citations to the Nicebus website clearly indicate otherwise – "If you lose cell phone service after boarding the bus, you will still be able to activate and display purchase tickets." Your own claim chart proves NO infringement can occur by Masabi's Mobile Ticket System. This on its face illustrates bad faith and a violation of Rule 11.

In addition, none of Bytemark's specific recitations show exactly which elements of the accused structure report to perform and recited element. Instead, we were presented with general referrals to the product descriptions and to a website which were set forth without any analysis or specific indication. Further, the claim chart exhibits rely on reciting the specific claim language



Darius Keyhani, Esq.
April 7, 2017
Page 4

alone without specific analysis or discussion as to how the accused products are purported to be infringing these elements.

Moreover, Bytemark's claim construction states each and every element of every claim is set forth as infringing either literally or under the doctrine of equivalents without any discussion on how or why the Plaintiff believes any specific function of the accused products would either literally infringe or in the alternative how the Plaintiff's believe they would infringe under the doctrine of equivalents.

Further, multiple times Bytemark provided support for the purported claim element by merely referencing a link to Masabi's website FAQs. These FAQs specifically reference offline activation which contradicts Bytemark's infringement allegations. In no attempt did Bytemark attempt to explain or apply this information to any asserted elements.

Under P.R 3-1 (g) "the party claiming patent infringement shall identify, on an element-by-element basis for each asserted claim, what source code of each Accused Instrumentality allegedly satisfies the software limitations of the asserted claim elements." *Id.* at 2. Bytetmark has failed to comply with P.R. 3-1(g) In particular, Masabi made the accused source code available to Bytemark's expert at the location of Masabi's counsel's office located in Bloomfield Hills, MI. That code was made available to Bytemark's expert on October 11, 2016 as part of Masabi's Non-infringement contentions. To date Bytemark has failed to even take the time to inspect Masabi's computer code which is an indication that Bytemark believes its case against Masabi is baseless and was not brought, nor maintained, in good faith.

As is established above, Bytemark set forth 106 instances of "on information and belief" in its infringement contentions. With Defendants free phone applications available online, six months of access to the source code, and the easily accessible information on Defendant's websites that contradicts their position, it is clear you have failed to comply with rules P.R. 3-1 & 3-2. This case is being maintained in bad faith.

During our phone conversations this past year I have repeatedly advised that Masabi's accused Transit Ticketing System does not operate within the scope of the asserted claims. Last year we produced to you Masabi's Operation Flow Chart (Bates No. MAS-0011645) which clearly shows elements of the '967 and '993 claims that are missing from the accused Transit Ticketing System (Accused Products). Not once has Bytemark countered this evidence. Period.

We produce herewith the declaration of Ben Whitaker, the head of innovation for Masabi. Whitaker authenticated Masabi's Operation Flow Chart (Bates No. MAS-0011645) and confirmed that the accused system operates in accordance with said chart. (Whitaker ¶ 9) You have been invited to depose him, and have not. His declaration points out the elements of the '967 and '993 patents that are missing from the Accused Products. For example, in paragraphs 10-16 he declared:



10. I have reviewed the claims of the '967 Patent. The Accused Products do not contain at least the following elements of Claim 1 of the '967 Patent:

"receiving from the user's computer device a request to verify purchase of a previously purchased electronic ticket and to obtain a visual validation display object that confirms that the user possesses the previously purchased electronic ticket."

"in dependence on the determination that the received token is valid, causing an activation of the purchased electronic ticket by transmitting to the user's computer device a data file comprising the visual validation display object."

11. The Accused Products do not contain at least the following elements of Claim 17 of the '967 Patent:

"receiving from the user's computer device a request to verify purchase of a previously purchased electronic ticket and to obtain a visual validation display object that confirms that the user possesses the previously purchased and valid electronic ticket."

"in dependence on the determination that the received token is valid, causing an activation of the purchased electronic ticket by transmitting to the user's computer device a data file comprising the visual validation display object."

12. The Accused Products do not contain at least the following elements of Claim 18 of the '967 Patent:

"receive from the user's computer device a request to verify purchase of a previously purchased electronic ticket and to obtain a visual validation display object that confirms that the user possesses the previously purchased and valid electronic ticket."

"in dependence on the determination that the received token is valid, cause an activation of the purchased electronic ticket by transmitting to the user's computer device a data file comprising the visual validation display object."

13. I have reviewed the claims of the '993 Patent. The Accused Products do not contain at least the following elements of Claim 1 of the '993 Patent:

"transmitting a token associated with a previously purchased electronic ticket to a remote display device."



"validating the token by matching the token transmitted to the remote display device to the copy of the unique alphanumeric string stored on the central computing system to provide a ticket payload to the remote display device."

"transmitting to the remote display device a secured validation display object associated; with the ticket payload."

14. The Accused Products do not contain at least the following elements of Claim 8 of the '993 Patent:

"wherein the central computer system: transmits a token associated with the previously purchased electronic ticket to the at least one remote display device."

"validates the token associated with the previously purchased electronic ticket by matching the token transmitted to the remote display device to the copy of the unique alphanumeric string stored on the central computing system to provide a ticket payload to the at least one remote display device."

"upon a request received in the at least one remote display device, validates the token associated with the previously purchased electronic ticket by matching the token transmitted to the remote display device to the copy of the unique alphanumeric string stored on the central computing system to provide a ticket payload to the at least one remote display device."

15. I attest that Plaintiff Bytemark could have easily established that at least the above elements of the '967 and '993 Patents are missing from the Accused Products by:

a) purchasing a ticket using the Accused Product on a mobile device;

b) placing the mobile device in an internet disconnected state such as airplane mode without network access;

c) activating the ticket while in the internet disconnected state; and

d) observing the activated ticket on the display while in the internet disconnected state.

16. I attest that the simple evaluation step outlined above would clearly indicate to an industry observer that any required activation display object was already stored on the mobile phone at purchase and does not need to be requested from the central server in order to activate and validate the ticket.



Darius Keyhani, Esq.
April 7, 2017
Page 7

It is clear that Bytemark, had it conducted a sufficient pre-suit investigation, it would have determined the Accused Products do not infringe any claim of the asserted patents. This case has been brought in bad faith.

We have previously informed you that the asserted patents are invalid in view of the plethora of prior art we have produced to Bytemark. To date Bytemark has not responded to our invalidity assertions or invalidity charts that show each claim element is anticipated by prior art that was never considered by the U.S. Patent Office. Be advised that we are filing an IPR for the '967 and '993 patents. Attached is a draft of the '967 Petition to invalidate the '967 patent. As shown in the IPR petition, the asserted claims of the '967 patent are anticipated and thus invalid. We encourage Bytemark to study the IPR.

As you are well aware, we fully intend to seek our attorney fees and costs associated with our defense of Bytemark's patent assertions.

To be clear, please be advised that Masabi contends that Bytemark's prior assertion of claims 1, 17 and 18 of the '967 patent and claim 1 of the '993 patent against Masabi, and Bytemark's newly asserted claims 1-17, and 22-24 of the '993 patent against Masabi, are frivolous and in violation of Rule 11(b), and that Bytemark and its counsel, Meredith & Keyhani, PLLC, and Andy Tindel Attorney & Counselor At Law, P.C., should be sanctioned thereunder by being jointly and severally liable for Masabi's attorney's fees and costs in defending the patent assertions accrued to date and which are hereinafter incurred, including any motion practice to obtain such an award. There is simply no good faith basis in the facts or law for Bytemark's assertions of the '967 or '993 patents against Masabi's Mobile Ticketing System. By failing to put forth compliant claim construction charts, failing to conduct a proper pre-suit investigation, and failure to produce any evidence supporting its claims, Bytemark has essentially admitted this fact.

We suggest that Bytemark review and consider the following cases, each of which we will cite to the Court as relevant authority, as necessary:

*Vehicle Operation Technologies, LLC v American Honda Motor Co., Inc.,* Civil Action No. 13-537-RGA, 2014 U.S. Dist. LEXIS 127855 (D. Del., September 12, 2014)

• "The Plaintiffs attorneys' continued insistence to litigate this matter, even after being apprised by the Defendants that the accused products could not possibly infringe, further highlights that the Plaintiff's attorneys simply turned a blind eye to the actual vehicles that they were accusing of infringement. For example, regarding BMW's accused products, BMW's counsel sent letters on at least five separate occasions to Plaintiff's counsel. (1: 13-cv-0053 8-RGA D.I. 22 at 24). BMW's counsel sent a letter on July 17, 2013 explaining how the inventor's disclaimer excluded BMW's products. (1:13-cv-00538-RGA D.I. 22-1 at 20-23). Then on August 5, 2013, after BMW had not received a response from Plaintiffs counsel concerning the July 17, 2013 letter, BMW



reiterated its arguments and warned the Plaintiff that it intended to file a Rule 11 motion. *Id*. at 25-26. Similar letters were sent by the other defendants. BMW additionally apprised the Plaintiff of the disclaimer issue at both the case scheduling conference on August 6, 2013 and when BMW served the Plaintiff with a copy of the present Rule 11 motion on September 4, 2013." At *23.

<u>Eon-Net LP v. Flagstar Bancorp</u>, 653 F.3d 1314 (Fed. Cir. 2011)

- "In particular, the district court found that EonNet failed to engage the claim construction process in good faith because Eon-Net failed to offer a construction for any disputed claim terms, lodged incomplete and misleading extrinsic evidence with the court, and submitted declarations that contradicted earlier deposition testimony by the declarants. … The district court concluded that Eon-Net 'attempted to evade a careful analysis of the claim terms through the Markman process' after it prevailed in the Eon-Net I appeal on the basis that the district court "improperly granted summary judgment without affording Eon-Net notice and an opportunity to argue its position on the scope of the patent claims…'" At 1325 (internal citations omitted).

- "A reasonable pre-suit investigation, however, also requires counsel to perform an objective evaluation of the claim terms when reading those terms on the accused device. *See Q-Pharma, Inc. v. Andrew Jergens Co., 360 F.3d 1295, 1300-01 (Fed. Cir. 2004)*; *S. Bravo Sys., Inc. v. Containment Techs. Corp., 96 F.3d 1372, 1375 (Fed. Cir. 1996)*. The district court concluded that the written description expressly defines the invention as a system for processing information originating from hard copy documents, *Claim Construction Opinion, 2009 U.S. Dist. LEXIS 24080, at *26*, finding that Eon-Net's contrary claim construction position "borders on the illogical" and that '[t]he specification exposes the frivolity of Eon-Net's claim construction position.' *Rule 11 Sanctions Order, 239 F.R.D.at 616-17*. For the reasons stated above, those findings were not clearly erroneous." At. 1329.

<u>Vagabond Sys. v. Hydrapak, Inc.</u>, 753 F.3d 1291 (Fed. Cir. 2014)

- The district court properly determined that "claim construction is a function of the words of the claim not the 'purpose' of the invention," and that Source's construction "violates nearly every tenet of claim construction and amounts to a wholesale judicial rewriting of the claim." J.A. 4; see also *Cohesive Techs. Inc. v.Waters Corp.*, 543 F.3d 1351, 1368 (Fed. Cir. 2008) ("To be clear, it is the purpose of the limitation in the claimed invention—not the purpose of the invention itself—that is relevant."). Source was required to "perform an objective evaluation of the claim terms" to satisfy its obligation to conduct a reasonable pre-suit evaluation. *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1329 (Fed. Cir. 2011). By proposing a definition that ignores the canons of claim construction, Source did not meet that standard.



· The district court found that Source's opposition to the Rule 11 motion did "not even contain any product measurement that would tend to show whether Hydrapak's products infringe under any version of claim construction!" J.A. 8. Mr. Yonay's declaration in opposition to the motion for sanctions lacked any analysis or product measurement and calculation that would tend to support a finding that he performed a sufficient analysis supporting a reasonable belief of literal infringement, even under Source's own proposed claim construction. See J.A. 765

Bytemark, Andy Tindel Attorney & Counselor At Law, P.C., and Meredith & Keyhani's improper conduct is only magnified by your steadfast refusal to engage in a substantive exchange as to why a non-frivolous interpretation of how the '993 and '967 patents capture the Masabi's Mobile Ticketing System.  There is simply no other conclusion to reach other than that you have no good faith basis for your conduct.

If Bytemark maintains its infringement claims it is extremely likely that Bytemark, Andy Tindel Attorney & Counselor At Law, P.C. and potentially Meredith & Keyhani will be liable for Masabi's attorney fees. See *Vehicle Operation Techs., LLC v American Honda Motor Co., Inc.*, Civil Action No. 13-537-RGA, 2014 U.S. Dist. LEXIS 127855, *19-*20 (D. Del., September 12, 2014) (Law firm conduct sanctionable but not collectable due do failure to provide notice). For at least these same reasons Plaintiff and its counsel's conduct stands out under *Octane Fitness. See Octane Fitness, LLC v. ICON Health &Fitness, Inc.,* 134 S. Ct. 1749, 1756 (2014). The assertions made by counsel for Bytemark as noted above, violates Rule 11(b). If Bytemark does not fully dismiss with prejudice the patent case against Masabi within 21 days of this letter Masabi will have fully met its obligations to file a Rule 11 motion. In that Motion, Masabi reserves the right to seek dismissal and recover its costs and fees joint and severally from Bytemark and its counsel.

And finally, we understand Bytemark has been contacting Masabi's customers and threatening litigation.  Please be advised that we take such actions seriously.  Interference with Masabi's contracts could subject Bytemark to even further liability if it does not cease such activity.

Very truly yours,

**FISHMAN STEWART PLLC**

/Douglas P. LaLone/

Doug LaLone



Darius Keyhani, Esq.
April 7, 2017
Page 10

cc:   Masabi, Ltd.
      Andy Tindel, Esq.

Encls:  Declaration of Ben Whitaker
       IPR Petition for USPN 8,494,967
       Bytemark's defective Infringement Contentions