**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| BYTEMARK, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 2:16-cv-00543-JRG/RSP |
| | § | |
| MASABI LTD., | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

## <u>DEFENDANT MASABI LTD'S MOTION FOR RULE 11 SANCTIONS</u>

## <u>AGAINST BYTEMARK, INC.</u>

# TABLE OF CONTENTS

INTRODUCTION   5

APPLICABLE LEGAL STANDARDS   6

ARGUMENT   8

A.   Bytemark Instigated The Present Litigation In Bad Faith And Without A Proper Pre-Suit Investigation   8

B.   Bytemark Brought The Present Action Against Masabi, LTD. In A Venue It Knew To Be Improper.   9

C.   Bytemark Brought And Maintains This Litigation With Knowledge That Masabi LTD. Does Not Infringe The Patents-In-Suit   10

D.   Bytemark Brought And Maintains This Litigation With Knowledge That The Patents-In-Suit Are Invalid   14

E.   Bytemark's Infringement Contentions Violate PR 3-1(c) As They Fail To "Identify Specifically Where Each Element of Each Asserted Claim Is Found Within Each Accused Instrumentality"   15

F.   Bytemark Has Acted Improperly During This Litigation And Has Purposely And In Bad Faith Thwarted Discovery   18

G.   Bytemark Brought The Present Litigation Despite Knowing The Patents-In-Suit Are Directed Towards Non-Statutory Subject Matter   19

CONCLUSION   23

# TABLE OF AUTHORITIES

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014).  ........................................................................................ 19, 20, 23

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
    498 U.S. 533 (1991) ........................................................................................ 6

*Cohesive Techs. Inc. v.Waters Corp.*,
    543 F.3d 1351 (Fed. Cir. 2008) ........................................................................................ 8

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n.*
    776 F.3d 1343 (Fed. Cir. 2014)(cert. denied, 136 S. Ct. 119 (2015) ........................................ 22

*Cybersource Corp. v. Retail Decisions*,
    654 F.3d 1366 (Fed. Cir. 2011) ........................................................................................ 22, 23

*Digital Reg. of Tex., LLC v. Adobe Sys. Inc.*,
    WL 3361241 (N.D. Cal. July 3, 2013) .................................................................................. 15

*Droplets, Inc. v. Amazon.com*,
    WL 1563256 (N.D. Cal. Apr. 12, 2013) .............................................................................. 16

*Electric Power Group, LLC v. Alstrom S.A.* ("*Electric Power*")
    LEXIS 13861 (Fed. Cir. August 2016) ................................................................................ 21

*Eon-Net LP v. Flagstar Bancorp*,
    653 F.3d 1314 (Fed. Cir. 2011) ........................................................................................ 7, 8

*F.D.l.C. v. Maxxam, Inc.*,
    523 F.3d 566 (5th Cir. 2008) ........................................................................................ 6

*Global Sessions LP v. Travelocity.com LP*,
    WL 1903903 (E.D. Tex. May 25), ..................................................................................... 16

*Henderson v. Moore*,
    WL 1924230 (S.D. Tex. Apr. 29, 2008) .............................................................................. 6

*H-W Tech., L.C. v. Apple, Inc.*,

WL 3650597 (E.D. Tex. Aug. 2, 2012) ................................................................................... 16

*Intellectual Ventures I LLC v. Symantec Corp.*,
Cases 2015-1769, -1770, -1771, 7 (CAFC, Sept. 30, 2016) ............................................... 20, 21

*Planet Bingo LLC v. VKGS LLC*,
576 F. App'x 1005 (Fed. Cir. 2014) ................................................................................... 22

Q-*Pharma, Inc. v. Andrew Jergens Co.*,
360 F.3d 1295 (Fed. Cir. 2004) .......................................................................................... 7

*S. Bravo Sys., Inc. v. Containment Techs. Corp.*,
96 F.3d 1372 (Fed. Cir. 1996) ............................................................................................ 7

*Syneron Med. Ltd. v. Viora Ltd.*,
WL 7140643 (E.D. Tex. Dec. 12, 2014) ............................................................................. 6

*Vagabond Sys. v. Hydrapak, Inc.*,
753 F.3d 1291 (Fed. Cir. 2014) .......................................................................................... 8

*Vehicle Operation Technologies, LLC v. American Honda Motor Co., Inc.*,
67 F. Supp. 3d 637 (D. Del. 2014) ..................................................................................... 9

**Statutes**

28 U.S.C. § 1391 ................................................................................................................. 9
28 U.S.C. § 1400(b) ........................................................................................................... 9

**Rules**

Fed. R. Civ. P. 11(b). ......................................................................................................... 6
Fed. R. Civ. P. 13 ............................................................................................................... 9

Defendant Masabi, LTD. hereby respectfully submits this motion for Rule 11 sanctions against Plaintiff Bytemark, Inc., and Plaintiff's counsel.

## **INTRODUCTION**

From the onset of this litigation, Plaintiff Bytemark, Inc. has engaged in evasive and dilatory tactics directed towards maintaining this suit for the sole purpose of harassing Defendant Masabi, LTD. into an unwarranted settlement.  The litigation was brought without Bytemark performing the most basic analysis of Masabi's accused products or forming a good faith basis for asserting infringement of the Bytemark patents.  The litigation was brought in a jurisdiction in which Masabi, LTD. had no contacts and would therefore unjustifiably financially burden Masabi in defending the action.  The litigation was brought and maintained despite Masabi providing Bytemark with evidence of both non-infringement and invalidity of the Bytemark patents.  Bytemark has failed to provide valid infringement contentions and continues to avoid establishing a concrete infringement position after an entire year has passed since the filing of the complaint.  Bytemark has been derelict in complying with its discovery obligations in a further effort to extend the litigation and financially burden Masabi into considering an unwarranted settlement.  Bytemark has brought and maintained this lawsuit in bad faith for the sole purpose of exerting financial pressure on a non-infringing competitor in order to manipulate settlement.

Because Bytemark and its counsel initiated this lawsuit without performing an adequate pre-suit investigation, because they have maintained this lawsuit after receiving evidence that Masabi's accused products do not infringe the patents-in-suit, because they have maintained this lawsuit after receiving evidence that the patents-in-suit are invalid, and because they have continuously neglected their discovery obligations, Masabi respectfully requests that the Court

issue Rule 11 sanctions against Bytemark, Inc., as well as its lawyers (Darius Keyhani, and Andy

Tindel), and their respective law firms (MEREDITH & KEYHANI, PLLC and MT2 LAW

GROUP).

## APPLICABLE LEGAL STANDARDS

Rule 11 provides, in pertinent part:

> By presenting to the court ... [a] written motion or other paper, ... [that] attorney
>
> certifies that to the best of the person's knowledge, information, and belief,
>
> formed after an inquiry reasonable under the circumstances ... the claims,
>
> defenses, and other legal contentions are warranted by existing law or by a
>
> nonfrivolous argument for extending, modifying, or reversing existing law ....

Fed. R. Civ. P. 11(b). "Rule 11 is aimed at curbing abuses of the judicial system." *Syneron Med.*

*Ltd. v. Viora Ltd.*, No. 2:14-cv-00639, 2014 WL 7140643, at *2 (E.D. Tex. Dec. 12, 2014)

(quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540 (1991)) .

"In the Fifth Circuit, when determining whether a party has violated Rule 11, 'the

standard under which an attorney is measured is an objective, not subjective standard of

reasonableness under the circumstances.'" *Id.* (quoting *F.D.l.C. v. Maxxam, Inc.*, 523 F.3d 566,

581 (5th Cir. 2008)).  Thus, a court should "judge an attorney's compliance by an objective

standard of reasonableness, taking into account the circumstances at the time the document was

signed." *Henderson v. Moore, No*. C-08-036, 2008 WL 1924230, at * 1 (S.D. Tex. Apr. 29,

2008). "A reasonable inquiry must uncover both a factual and legal basis for the assertions." *Id* at

*3.

A Plaintiff's continuation of litigation after a clear presentation of non-infringement is a

basis for Rule 11 sanctions.  *Vehicle Operation Technologies, LLC v. American Honda Motor*

6

*Co., Inc.*, 67 F. Supp. 3d 637 (D. Del. 2014).  "The Plaintiffs attorneys' continued insistence to litigate this matter, even after being apprised by the Defendants that the accused products could not possibly infringe, further highlights that the Plaintiff's attorneys simply turned a blind eye to the actual vehicles that they were accusing of infringement.  For example, regarding BMW's accused products, BMW's counsel sent letters on at least five separate occasions to Plaintiff's counsel."  *Id.* at 652.

A Plaintiff's failure to offer a construction of disputed claim terms as well as a failure to perform a reasonable pre-suit investigation may be the basis for Rule 11 sanctions.   *Eon-Net LP v. Flagstar Bancorp,* 653 F.3d 1314 (Fed. Cir. 2011).  "In particular, the district court found that EonNet failed to engage the claim construction process in good faith because Eon-Net failed to offer a construction for any disputed claim terms, lodged incomplete and misleading extrinsic evidence with the court, and submitted declarations that contradicted earlier deposition testimony by the declarants. … The district court concluded that Eon-Net 'attempted to evade a careful analysis of the claim terms through the Markman process' after it prevailed in the Eon-Net I appeal on the basis that the district court' improperly granted summary judgment without affording Eon-Net notice and an opportunity to argue its position on the scope of the patent claims…'" *Id* at 1325 (internal citations omitted). "A reasonable pre-suit investigation, however, also requires counsel to perform an objective evaluation of the claim terms when reading those terms on the accused device. *See* Q-*Pharma, Inc. v. Andrew Jergens Co.,* 360 F.3d 1295, 1300-01 (Fed. Cir. 2004); *S. Bravo Sys., Inc. v. Containment Techs. Corp.,* 96 F.3d 1372, 1375 (Fed. Cir. 1996). The district court concluded that the written description expressly defines the invention as a system for processing information originating from hard copy documents, Claim Construction Opinion, 2009 U.S. Dist. LEXIS 24080, at *26, finding that *Eon-Net's* contrary

claim construction position "borders on the illogical" and that '[t]he specification exposes the frivolity of Eon-Net's claim construction position.' Rule 11 Sanctions Order, 239 F.R.D. at 616-17. For the reasons stated above, those findings were not clearly erroneous." *Id*. at 1329.  The district court properly determined that "claim construction is a function of the words of the claim not the 'purpose' of the invention," and that Source's construction "violates nearly every tenet of claim construction and amounts to a wholesale judicial rewriting of the claim." J.A. 4; see also *Cohesive Techs. Inc. v.Waters Corp*., 543 F.3d 1351, 1368 (Fed. Cir. 2008) ("To be clear, it is the purpose of the limitation in the claimed invention—not the purpose of the invention itself— that is relevant."). Source was required to "perform an objective evaluation of the claim terms" to satisfy its obligation to conduct a reasonable pre-suit evaluation. *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1329 (Fed. Cir. 2011).  By proposing a definition that ignores the canons of claim construction, Source did not meet that standard.  *Vagabond Sys. v. Hydrapak, Inc*., 753 F.3d 1291, 1301 (Fed. Cir. 2014).

## **ARGUMENT**

### **A. Bytemark Instigated The Present Litigation In Bad Faith And Without A Proper Pre-Suit Investigation**

Bytemark began this suit in May 2016 by alleging infringement of "at least claims 1, 17 and 18" of the '967 patent and "at least claim 1 of the '993 patent."  After Masabi filed a Rule 12(b)6 motion to dismiss this baseless suit, the premises of which was that the Complaint was defective on its face, Bytemark responded and surprisingly expanded its allegations in September 2016 to now include asserted claims 1-6, 17-23 and 34 of the '967 patent, and claims 1-17, and 22-24 of the '993 patent.  Bytemark expanded its list of asserted claims without any basis

whatsoever and has failed to provide any evidence supporting the alleged infringement of the initial 4 claims, much less the 34 claims it is currently asserting against Masabi.

It is clear that Bytemark, had it conducted a sufficient pre-suit investigation, would have determined the two Accused Products do not infringe any claim of the asserted patents. Bytemark has admitted such in their responses to Masabi's Requests to Admit.  Masabi asked Bytemark in Request Nos. 28 and 29 to "Admit that prior to the initiation of this case a sample of each accused product was obtained and assessed by an individual skilled in the art to determine if the accused product infringed at least one claim of the" ('967/'993 patent).  Bytemark responded with objections and a denial.  It is clear from Bytemark's discovery answer that it did NOT conduct an adequate investigation prior to the initiation of this lawsuit.  In addition, Bytemark confirmed this point when Bytemark objected to requests and failed to produce documents showing any pre-suit investigation.  This case was brought in bad faith and without a proper pre-suit investigation and therefore is subject to Rule 11 sanctions.

**B. Bytemark Brought The Present Action Against Masabi, LTD. In A Venue It Knew To Be Improper.**

Bytemark brought this action against Masabi LTD., a foreign U.K. company, in a venue it knows to be improper.  Venue is improper according to 28 U.S.C. § 1391 and 1400(b) and pursuant to Rule 13 of the Federal Rules of Civil Procedure.  In addition, Bytemark brought this action with full knowledge that Masabi LTD. is a foreign entity with no contacts with the state of Texas and no business dealings within this jurisdiction.  Masabi has produced documents evidencing this fact and has confirmed this fact in its Answer.  Bytemark was aware of the identity and location of Masabi, LTD. as well as its lack of contacts with the state of Texas.  However, Bytemark brought the present lawsuit in this jurisdiction in an attempt to

inconvenience Masabi LTD. and pressure them towards a settlement regardless of liability.

Bytemark's actions are in bad faith and therefore are subject to Rule 11 sanctions.

### C.  Bytemark Brought And Maintains This Litigation With Knowledge That Masabi LTD. Does Not Infringe The Patents-In-Suit

In the claim construction hearing on May 31, 2017, Magistrate Judge Payne rejected

every claim position Bytemark put forth that attempted to construe the claims to encompass the

Accused Products.  In contrast, the Court adopted Masabi's claim constructions that clearly

established that the '967 patent and the '993 patent do NOT encompass the single purchase

transactions utilized by the Masabi Accused Products. The Court held that the phrase "possession

of a purchased electronic ticket on a user's computer device" to mean "a purchased electronic

ticket is stored on a user's computer device." (Dkt # 81, PageID #1173).  Similarly, the Court

construed the term "user possesses" to mean "stored on the user's computer device." (Dkt # 81,

PageID #1174).  The Court  construed the phrase "receiving [receive] from the user's computer

device a request to verify purchase of a previously purchased electronic ticket and to obtain a

visual validation display object that confirms that the user possesses the previously purchased

[and valid] electronic ticket" to mean "receiving by [the server / computer system / one or more

computers] a request from the user's computer device, the request being a request to (1) confirm

a prior purchase of an electronic ticket from a discrete prior purchase operation and (2) obtain a

visual validation display object that confirms that the user possesses the previously purchased

[and valid] electronic ticket." (Dkt # 81, PageID #1181).

Thus the Court made it clear that the verification step of the claims was a separate

transaction from the discreet prior purchase operation.  This made it clear to Bytemark that their

patents fail to cover the single purchase transactions utilized by the Masabi accused products.  In

fact, the Court specifically rejected Bytemark's attempt to argue a single passage mentioned in the '967 and '993 patents supports the patents covering a single purchase transaction:

> Further, as discussed above with regard to the passage at '967 Patent 4:32-42, that passage is equally inapplicable to the claim elements of the '993 Patent as again, as with the '967 Patent, almost the entirety of the claim limitations are absent from the embodiment of 4:32-42 which does not describe the transmitting, token storage and validation steps. (Dkt # 81, PageID #1193).

Bytemark is therefore on notice from the Court that their '967 and '993 patents do NOT cover the single purchase transactions utilized by the Masabi accused products.

The resulting claim construction again drives home the point that Masabi's system in no way infringes the asserted 34 claims.  Bytemark has presented no proof to the contrary. This is consistent with what Masabi has communicated to Bytemark routinely over the past year.  Last year Masabi produced to Bytemark Masabi's Operation Flow Chart (Bates No. MAS-0011645) which clearly shows elements of the '967 and '993 claims that are missing from the accused Transit Ticketing System (Accused Products).  Not once has Bytemark countered this evidence.

Masabi has produced to Bytemark the declaration of Ben Whitaker, the head of innovation for Masabi.  **Exhibit A**.  Whitaker authenticated Masabi's Operation Flow Chart (Bates No. MAS-0011645) and confirmed that the accused system operates in accordance with said chart. (Whitaker ¶ 9)  Bytemark has been invited to depose him, and has only recently made such arrangements.  His declaration points out the elements of the '967 and '993 patents that are missing from the Accused Products.  For example, in paragraphs 10-16 he declared:

10.     I have reviewed the claims of the '967 Patent.  The Accused Products do not contain at least the following elements of Claim 1 of the '967 Patent:

"receiving from the user's computer device a request to verify purchase of a previously purchased electronic ticket and to obtain a visual validation display object that confirms that the user possesses the previously purchased electronic ticket."

"in dependence on the determination that the received token is valid, causing an activation of the purchased electronic ticket by transmitting to the user's computer device a data file comprising the visual validation display object."

11.     The Accused Products do not contain at least the following elements of Claim 17 of the '967 Patent:

"receiving from the user's computer device a request to verify purchase of a previously purchased electronic ticket and to obtain a visual validation display object that confirms that the user possesses the previously purchased and valid electronic ticket."

"in dependence on the determination that the received token is valid, causing an activation of the purchased electronic ticket by transmitting to the user's computer device a data file comprising the visual validation display object."

12.     The Accused Products do not contain at least the following elements of Claim 18 of the '967 Patent:

"receive from the user's computer device a request to verify purchase of a previously purchased electronic ticket and to obtain a visual validation display object that confirms that the user possesses the previously purchased and valid electronic ticket."

"in dependence on the determination that the received token is valid, cause an activation of the purchased electronic ticket by transmitting to the user's computer device a data file comprising the visual validation display object."

13.     I have reviewed the claims of the '993 Patent.   The Accused Products do not contain at least the following elements of Claim 1 of the '993 Patent:

"transmitting a token associated with a previously purchased electronic ticket to a remote display device."

"validating the token by matching the token transmitted to the remote display device to the copy of the unique alphanumeric string stored on the central computing system to provide a ticket payload to the remote display device."

"transmitting to the remote display device a secured validation display object associated; with the ticket payload."

14.     The Accused Products do not contain at least the following elements of Claim 8 of the '993 Patent:

"wherein the central computer system: transmits a token associated with the previously purchased electronic ticket to the at least one remote display device."

"validates the token associated with the previously purchased electronic ticket by matching the token transmitted to the remote display device to the copy of the unique alphanumeric string stored on the central computing system to provide a ticket payload to the at least one remote display device."

"upon a request received in the at least one remote display device, validates the token associated with the previously purchased electronic ticket by matching the token transmitted to the remote display device to the copy of the unique alphanumeric string stored on the central computing system to provide a ticket payload to the at least one remote display device."

15.     I attest that Plaintiff Bytemark could have easily established that at least the above elements of the '967 and '993 Patents are missing from the Accused Products by:

a) purchasing a ticket using the Accused Product on a mobile device;

b) placing the mobile device in an internet disconnected state such as airplane mode without network access;

c) activating the ticket while in the internet disconnected state; and

d) observing the activated ticket on the display while in the internet disconnected state.

16.      I attest that the simple evaluation step outlined above would clearly indicate to an industry observer that any required activation display object was already stored on the mobile phone at purchase and does not need to be requested from the central server in order to activate and validate the ticket.

Despite having received clear and un-contradicted evidence of non-infringement, Bytemark continues to maintain this lawsuit without explanation or contesting the legitimacy of the provided proof of non-infringement and therefore is subject to Rule 11 sanctions.

### D.  Bytemark Brought And Maintains This Litigation With Knowledge That The Patents-In-Suit Are Invalid

Masabi has previously informed Bytemark that the asserted patents are invalid in view of a plethora of prior art references.  To date Bytemark has not responded to Masabi's invalidity assertions or invalidity charts that show each claim element is anticipated by prior art that was never considered by the U.S. Patent Office.  Due to Bytemark's refusal to respond with evidence contrary to any of Masabi's invalidity or non-infringement positions, Masabi was forced to incur the substantial time and costs associated with filing an IPR.  Thus, on May 18, 2017, Masabi filed an IPR petition with the USPTO to start the invalidation proceedings for USPN 8,494,967. See IPR #  IPR2017-01449.  Bytemark has made no effort to distinguish the patents-in-suit from the provided invalidating prior art nor have they provided any indication to Masabi LTD. as to

how they believe Masabi's invalidity positions are invalid.  Rather, Bytemark maintains a blind

and unexplained denial of invalidity solely for the purpose of continuing this improper litigation

in the hopes of prying a settlement agreement out of Masabi LTD.

In addition, Bytemark has maintained the position that because Masabi's accused systems

use "visual validation", then they must be infringing.  Bytemark did not invent mobile ticketing

visual validation.  In fact, Masabi started using visual validation years before Bytemark even

filed the patents-in-suit.  Thus, Masabi's own older systems are indeed prior art to Bytemark's

broad claim coverage assertions.

This constitutes bad faith and therefore is subject to Rule 11 sanctions.

### E. Bytemark's Infringement Contentions Violate PR 3-1(c) As They Fail To "Identify[] Specifically Where Each Element of Each Asserted Claim Is Found Within Each Accused Instrumentality"

Bytemark's Infringement Contentions purposely did not put Masabi on notice of what

Bytemark claims infringes the asserted claims, nor did they explain how the Accused Products

allegedly infringe the asserted claims.  Several courts have held infringement contentions like

Bytemark's to be inadequate.  For example, courts have held that a patentee's infringement

contentions are inadequate where they "incorporate[] screen shots in lieu of explanatory text,"

such that the defendant must "guess what particular system (or aspect of a particular system)

[plaintiff] is accusing of meeting each limitation." *Digital Reg. of Tex., LLC v. Adobe Sys. Inc.*,

No. 12-cv-01971, 2013 WL 3361241, at *3-4 (N.D. Cal. July 3, 2013); see also *Droplets, Inc. v.

Amazon.com*, No. C12-03733, 2013 WL 1563256, at *3-5 (N.D. Cal. Apr. 12, 2013) (holding

that infringement contentions comprised of many pages of screen shots for each limitation "fail

to provide the factual basis of the [patentee's] contentions" without an explanation as to "which

language from the claim limitations corresponds to the selected . . . screen shots"); *Global

*Sessions LP v. Travelocity.com LP*, No. 10-cv-671, 2012 WL 1903903, at \*7 (E.D. Tex. May 25, 2012) ("Simply charting www.amazon.com as a representative example to illustrate specific theories of infringement for multiple websites is insufficient . . . .").  Courts have also held contentions are inadequate where they merely parrot the claim language. *See, e.g.*, *H-W Tech., L.C. v. Apple, Inc.*, No. 11-cv-651, 2012 WL 3650597, at \*4, \*7 (E.D. Tex. Aug. 2, 2012) (ordering patentee to supplement infringement contentions, in part because the existing contentions "merely recite[d] language from the claims at issue without providing any support for some of their elements").

Bytemark's contentions commit all of the above offenses.  They utilize screen shots and links to the Defendant's website in combination with mere parroting of the claim language.  In addition, they are replete with numerous citations merely to "upon information and belief" without identifying specific elements of the accused products on which to rely on such belief.  Bytemark produced four (4) infringement contention claim charts on September 16, 2016.  **Exhibits B-E**.  These claim charts failed to identify a large number of elements of the recited claims:

Exhibit B – '967 Patent in view of the Nice gomobile product

Bytemark stated 29 assertions of elements relegated to on information and belief.

Exhibit C – '967 Patent in view of the mticket MBTA product

Bytemark stated 29 assertions of elements relegated to on information and belief.

Exhibit D – '993 Patent in view of the Nice gomobile product

Bytemark stated 24 assertions of elements relegated to on information and belief.

Exhibit E – '993 Patent in view of the mticket MBTA product

Bytemark stated 24 assertions of elements relegated to on information and belief.

Bytemark set forth, in total, 106 instances of "on information and belief" in its infringement contentions.   With Defendants free phone applications available online, eight months of access to the source code, and the easily accessible information on Defendant's websites that contradicts their position, it is clear Bytemark has failed to comply with rules P.R. 3-1 & 3-2.   Furthermore, Bytemark's citations to Masabi's websites, at times, contradict its own assertions of "upon information and belief".   In just one particular example, Plaintiff asserts as their basis for alleging infringement of claim 1 of the '967 patent that the accused product discloses:

receiving from the user's computer device a token associated with the received request.

And in Bytemark's contention chart they merely allege:

On information and belief, purchasing a ticket, **activating a ticket**, and obtaining a visual validation display object **are on-line transactions involving a Masabi server system**.

(Exhibit B pg. 5; Exhibit C, pg. 6)

However, in the SAME infringement chart for claim 1, Plaintiffs include the following snapshot of Masabi's accused Nicebus website:



**If I lose cell phone service while trying to use my ticket, will my mobile ticket still work?**

Mobile tickets do not need cell phone or wifi service to be displayed; however, service or wifi is needed to purchase a ticket. *You must purchase your ticket before boarding the bus.*

If you lose cell phone service after boarding the bus, you will still be able to activate and display purchased tickets. You will not be able to make any purchases or other changes until your cell phone or wifi service is restored.

It is facially inconceivable that Plaintiffs actually hold "information and belief" that at a minimum the "activating a ticket" is "on-line transactions involving the Masabi server system" as alleged when their own citations to the Nicebus website clearly indicate otherwise – "If you lose cell phone service after boarding the bus, you will still be able to activate and display purchased tickets." It is clear that Bytemark's charts do not "particularly point to the portion of the Accused Product which is asserted to perform the function described in each claim limitation" such that defendants have "adequate notice and information with which to litigate their cases." Masabi has been left to speculate how Bytemark intends to apply the elements of each claim to the Accused Products, which is precisely the scenario that P.R. 3.1 was written to avoid.

The only logical conclusion to be gleaned from the aforementioned deficiencies is that after an entire year passing since the filing of the original complaint, Bytemark does still not have a coherent infringement position to set forth regarding Masabi's accused products. Bytemark should not have instigated this lawsuit without first having developed a clear infringement position. The fact that they still have not developed one, after a year of litigation, is clear evidence of bad faith and therefore is subject to Rule 11 sanctions.

## F. Bytemark Has Acted Improperly During This Litigation And Has Purposely And In Bad Faith Thwarted Discovery

Bytemark has engaged in obstructionist tactics throughout this litigation. In response to Masabi's first thirty seven (37) requests to admit (**Exhibit F**) Bytemark has responded identically to all with objections and denials:

> Plaintiff objects to the extent this Request calls for a legal conclusion and calls for the interpretation of legal documents. Plaintiff further objects to the extent this seeks

> information protected by the attorney-client privilege or work product privilege.
> Plaintiff further objects to this request as premature and inconsistent with the
> scheduling for expert disclosures under the Court's Docket Control Order. To the
> extent any response to this request is mandated, Plaintiff denies.

These responses paint a clear picture of Bytemark's determination to avoid providing clear positions to Masabi during litigation.  For example, when Masabi asked in Request #3 an admission using the exact language of the prior art reference, "Admit that Terrell discloses a display object that may be verified 'merely done by the inspector's eyes'." Bytemark responded with the above objections and denial.  When Masabi asked in Request #22 "Admit that the encryption of mobile ticketing transmission was known in the art prior to the priority dates of both the '967 patent and the '993 patent".  Bytemark responded with the same objections and denial.  It is clear that this was merely an obstructionist position to deny requests to admit facts that are undeniably true.  It is unreasonable under any standard for a Plaintiff to provide blanket denials to legitimate discovery requests, particularly those whose existence was rendered necessary solely due to Plaintiff's own deliberate refusal to establish a coherent infringement contention against Masabi's accused products.  The actions of Bytemark are the very definition of bad faith and justify Rule 11 sanctions.

### G.  Bytemark Brought The Present Litigation Despite Knowing The Patents-In-Suit Are Directed Towards Non-Statutory Subject Matter

The asserted patents are directed to non-statutory subject matter, and are thus clearly invalid as they are directed to abstract ideas without significantly more.  The United States Supreme Court in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l* emphasized the two-part analysis for subject matter eligibility for patents.  134 S. Ct. 2347, 2355 (2014).   Under step one, the court

must determine "whether the claims at issue are directed to one of those patent-ineligible

concepts" *Id*.   Examples of patent-ineligible concepts include abstract ideas such as

fundamental economic practices, certain methods of organizing human activities, an idea "of

itself," and mathematical relationships / formulas.   After establishing that the claims are directed

to a patent-ineligible concept, the court must proceed to step two so as to "search for an inventive

concept— i.e., an element or combination of elements that is sufficient to ensure that the patent

in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.*

"Simply appending conventional steps, specified at a high level of generality," which are "well

known in the art" and consist of "well-understood, routine, conventional activit[ies]" previously

engaged in by workers in the field, is not sufficient to supply the inventive concept.  *Intellectual*

*Ventures I LLC vs. Symantec Corp*., Cases 2015-1769, -1770, -1771, 7 (CAFC, Sept. 30, 2016)

(citing  *Alice Corp*, 2357).   Thus, a determination of subject matter ineligibility requires

satisfaction of both parts of the *Alice Corp* analysis, which the asserted patents do not satisfy.

As *Alice Corp* has been applied by the Federal Circuit, the asserted patents also fail as

being directed to non-statutory subject matter.  The Federal Circuit has issued numerous holdings

for patent ineligibility under *Alice Corp*.  For example, the Asserted Claims are comparable to

those in *Intellectual Ventures I LLC vs. Symantec Corp* ("*Symantec*") in which the Federal

Circuit held the claims were invalid.   Applying part one, the receiving data such as a request and

a token, determining whether the data is stored and is valid, and causing activation by

transmitting the data as recited in claim 1 of the '967 Patent are comparable to the "receiving e-

mail (and other data file) identifiers, characterizing e-mail based on the identifiers, and

communicating the characterization" that the Federal Circuit held to be an abstract idea.  *Id*.

Applying part two, because the Asserted Claims do not "improve the functioning of the

computer itself" *Id*. at 12 (citing to *Alice Corp* at 2359).   Such as "the way a computer stores and

retrieves data in memory" *Id.* (citing  *Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1339 (Fed.

Cir. May 2016)), and instead "use[d] generic computers to perform generic computer functions."

*Id*. at 12.  The Asserted Claims do not amount to significantly more than the abstract idea.  Thus,

the Asserted Claims are comparable to those in the Symantec decision, and thus are invalid for

being directed to non-statutory subject matter.

　　　　Similar to *Electric Power Group, LLC v. Alstrom S.A*. ("*Electric Power*"), the "visual

validation display object" of the '967 Patent and "validation display object of the '993 Patent are

examples of abstract subject matter, as they "do not even require a new source or type of

information, or new techniques for analyzing it." Case 2015-1778, 2016 U.S. App. LEXIS 13861

(Fed. Cir. August 2016).  The '967 Patent, similar to the '993 Patent, states that "invention

provides a mechanism whereby a venue or other facility that meters usage by means of tickets

can distribute tickets electronically and use a visual aid on an electronic device to visually

confirm that a person is a valid ticket holder" (column 1, lines 15-19), but the Federal Circuit

held that "[m]erely requiring the selection and manipulation of information--to provide a

'humanly comprehensible' amount of information useful for users ... -- by itself does not

transform the otherwise-abstract processes of information collection and analysis." *Id*.  Further,

the claimed visual validation display object does not specify "any requirements for how the

desired result is achieved."  *Id*.  The Asserted Claims also "do not require any nonconventional

computer, network, or display components, or even a "non-conventional and non-generic

arrangement of known, conventional pieces," but merely call for performance of the claimed

information collection, analysis, and display functions "on a set of generic computer

components" and display devices."  *Id*. (citing *Bascom*, 2016 U.S. App. LEXIS 11687, 2016 WL

3514158, at *6-7).  As in the Electric Power decision, "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Id*.  The asserted patents have comparable defects, and thus fall under the same reasoning.

The Asserted Claims are also comparable to those that were at issue in *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*. 776 F.3d 1343, 1345 (Fed. Cir. 2014)(cert. denied, 136 S. Ct. 119 (2015).  The Federal Circuit held that claims directed to "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in memory" are patent ineligible.  *Id*. These claims are comparable to the receiving data such as a request and a token, determining whether the data is stored and is valid, and causing activation by transmitting the data as recited in claim 1 of the '967 Patent. Accordingly, the Asserted Claims are analogous to those in *Content Extraction*, thereby making them invalid under comparable reasoning.

Similar ticketing systems to those in the Asserted Patents have been held to be patent ineligible.  In *Planet Bingo LLC v. VKGS LLC*, the Federal Circuit held that a computer-aided ticketing management system for bingo was directed to an abstract idea.  576 F. App'x 1005, 1006 (Fed. Cir. 2014).  This similar reasoning may be applied to the electronic ticketing of the Asserted Claims.  Again, the Accused Patents lack statutory subject matter, and thus are invalid.

With respect to internet transactions as in the Asserted Patents, the reasoning in *Cybersource Corp. v. Retail Decisions* may also extend to the Asserted Claims.  654 F.3d 1366, 1370, 1373 (Fed. Cir. 2011).  In *Cyberssource*, the court held that "a method for verifying the validity of a credit card transaction over the Internet" was directed to an abstract idea or unpatentable mental process.  Considering that visual validation is comparable to the verification

in *Cybersource*, applying the same analysis to the asserted patents results in the invalidation thereof.

Accordingly, the asserted patents are directed to abstract subject matter without significantly more, and thus the asserted patents are invalid under *Alice Corp*.   Plaintiff Bytemark and their counsel, as well as the larger patent law community as a whole, are aware of the rulings flowing from *Alice Corp*. and their implications of the validity of patents such as the patents-in-suit.  Bytemark chose to initiate this lawsuit with knowledge of the non-infringement of the accused products, with knowledge of the invalidity of the patents-in-suit due to prior art references, with knowledge of the invalidity of the patents-in-suit due to *Alice Corp*., without fulfilling the basic requirements of a pre-suit investigation, and continuously failing to comply with discovery requirements.  Rule 11 sanctions are therefore justifiable.

## CONCLUSION

For the foregoing reasons, Masabi requests that the Court grant its motion for sanctions.

Kasia Brozynski, counsel for Masabi, conferred this week with Andy Tindel, counsel for Bytemark, about the substance of the motion but agreement was not reached. Further, Doug LaLone, counsel for Masabi, has conferred with Darius Keyhani, counsel for Bytemark, about the substance of the motion, but agreement could not be reached.

Dated:  July 7, 2017

Respectfully submitted,

FISHMAN STEWART PLLC

By:   /s/ Douglas P. LaLone (P45751)
      Douglas P. LaLone (P45751)
      Thomas E. Donahue (P57089)
      39533 Woodward Ave., Suite 140

23

Bloomfield Hills, MI 48304
Tel.: (248) 594-0600
Fax: (248) 594-0610
dlalone@fishstewip.com


STRASBURGER & PRICE, LLP

By:    */s/ Katarzyna Brozynski*
       Katarzyna Brozynski
       Texas Bar No. 24036277
       Antonio S. Devora
       Texas State Bar No. 24074133
       Sorana G. Ban
       Texas State Bar No. 24061520
       901 Main Street, Suite 6000
       Dallas, Texas 75202
       (214) 245-3068 Telephone
       (214) 245-3097 Fax
       Email: kasia.brozynski@strasburger.com
       Antonio.Devora@strasburger.com
       sorana.ban@strasburger.com

       *Attorneys for Defendant Masabi Ltd.*

## **CERTIFICATE OF SERVICE**

This is to certify that all known counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per E. Dist. Tex. Loc. Ct. R. CV-5(a)(3) on this the 7th day of July 2017.  Any other known counsel of record will be served with a copy of this document by email and/or facsimile transmission.

By:     */s/ Katarzyna Brozynski*
          Katarzyna Brozynski

## CERTIFICATE OF CONFERENCE

Counsel for Defendant Masabi LTD. have complied with the meet and confer requirements of Local Rule CV-7(h) and the foregoing Motion to Sanction Bytemark Inc. under Rule 11.  In particular, over 21 days ago a draft Rule 11 letter and motion was sent to opposing counsel.  To date, Plaintiff never responded to said letter.

The personal conference required by Local Rule CV-7(h) has been conducted; via telephone conference between Andrew Tindel, Local Counsel for Bytemark, and Katarzyna Brozynski, Local Counsel for Masabi, on July 6, 2017 and July 7, 2017, resulting in no agreement.

By:    */s/ Katarzyna Brozynski*
Katarzyna Brozynski
Local Counsel for Masabi LTD.