# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| BYTEMARK, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 2:16-cv-00543-JRG/RSP |
| | § | |
| MASABI LTD., | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

**DECLARATION OF BEN WHITAKER**

I, Ben Whitaker, declare as follows:

**I.    INTRODUCTION**

1. I am over the age of eighteen (18) and otherwise competent to make this declaration.

2. I am employed by Masabi Limited ("Masabi") and have been asked to provide my technical analysis in connection with the above-captioned proceeding. In particular, I have been asked to render a technical opinion in connection with Masabi's "Accused Products" in view of U.S. Patent No. 8,494,967 ("the '967 Patent") and U.S. Patent No. 9,239,993 ("the '993 Patent").

3. I have personal knowledge of the facts in this Declaration and could competently testify to these facts if called as a witness.

## II. MY BACKGROUND AND QUALIFICATIONS

4. I am currently the Head of Innovation for Masabi and have held this position since December 2014. Prior to that, I was the Chief Executive Officer of Masabi from May 2002 to December 2014. My office mailing address is 37 Bevenden Street, London N1 6BH.

5. I have over 21 years of technical experience dating back to May 1995. In addition to my employment at Masabi, I have been the Director of Blue Technologies Ltd from July 2001 to July 2009, an External Consultant to Playtech from 2005 to 2007, an Engineer for Inview Systems Limited from 1999 to 2001, a Human Interface Research Engineer for Xerox PARC from May 1999 to September 1999, an IFF Encrypted Radar Systems Engineer for Raytheon from May 1998 to August 1999, an Object Oriented Programming Engineer for IBM from September 1996 to September 1997, and an Electronics Manufacturing Engineer for Kemitron from May 1995 to September 1996.

6. I earned a Bachelor's degree in Engineering and a Master's degree in Manufacturing Engineering from the University of Cambridge in Cambridge, England.

7. My technical experience includes computer encryption, mobile commerce, mobile communication, computer and mobile phone programming, electronics, mobile technology, product management, mobile internet, mobile payments, mobile marketing, e-commerce, wireless, cloud computing, software development, agile methodologies, product development, telecommunications, Software as a Service (SaaS).

8. I managed and continue to manage the technical development of the "Accused Products" in the above-captioned proceeding, including Masabi's NICE gomobile and MBTA mTicket systems. I have been involved with the design, coding, and implementation of the Accused Products. I am personally familiar with how they work and operate.

**III.     ANALYSIS**

9.     I verify that the Accused Products operate in accordance with the "Masabi Operation Flow Chart," Bates No. MAS-001645 that is attached hereto as Exhibit A and in accordance with the "Masabi Timeline" that is attached hereto as Exhibit B. I understand that Exhibit A has been provided to Plaintiff Bytemark on an Attorney Eyes Only basis.

10.     I have reviewed the claims of the '967 Patent. The Accused Products do <u>not</u> contain at least the following elements of Claim 1 of the '967 Patent:

"receiving from the user's computer device a request to verify purchase of a previously purchased electronic ticket and to obtain a visual validation display object that confirms that the user possesses the previously purchased electronic ticket."

"in dependence on the determination that the received token is valid, causing an activation of the purchased electronic ticket by transmitting to the user's computer device a data file comprising the visual validation display object."

11.     The Accused Products do <u>not</u> contain at least the following elements of Claim 17 of the '967 Patent:

"receiving from the user's computer device a request to verify purchase of a previously purchased electronic ticket and to obtain a visual validation display object that confirms that the user possesses the previously purchased and valid electronic ticket."

"in dependence on the determination that the received token is valid, causing an activation of the purchased electronic ticket by transmitting to the user's computer device a data file comprising the visual validation display object."

12. The Accused Products do <u>not</u> contain at least the following elements of Claim 18 of the '967 Patent:

"receive from the user's computer device a request to verify purchase of a previously purchased electronic ticket and to obtain a visual validation display object that confirms that the user possesses the previously purchased and valid electronic ticket."

"in dependence on the determination that the received token is valid, cause an activation of the purchased electronic ticket by transmitting to the user's computer device a data file comprising the visual validation display object."

13. I have reviewed the claims of the '993 Patent. The Accused Products do <u>not</u> contain at least the following elements of Claim 1 of the '993 Patent:

"transmitting a token associated with a previously purchased electronic ticket to a remote display device."

"validating the token by matching the token transmitted to the remote display device to the copy of the unique alphanumeric string stored on the central computing system to provide a ticket payload to the remote display device."

"transmitting to the remote display device a secured validation display object associated; with the ticket payload."

14. The Accused Products do <u>not</u> contain at least the following elements of Claim 8 of the '993 Patent:

"wherein the central computer system: transmits a token associated with the previously purchased electronic ticket to the at least one remote display device."

"validates the token associated with the previously purchased electronic ticket by matching the token transmitted to the remote display device to the copy of the unique

alphanumeric string stored on the central computing system to provide a ticket payload to the at least one remote display device."

"upon a request received in the at least one remote display device, validates the token associated with the previously purchased electronic ticket by matching the token transmitted to the remote display device to the copy of the unique alphanumeric string stored on the central computing system to provide a ticket payload to the at least one remote display device."

15. I attest that Plaintiff Bytemark could have easily established that at least the above elements of the '967 and '993 Patents are missing from the Accused Products by:

a) purchasing a ticket using the Accused Product on a mobile device;

b) placing the mobile device in an internet disconnected state such as airplane mode without network access;

c) activating the ticket while in the internet disconnected state; and

d) observing the activated ticket on the display while in the internet disconnected state.

16. I attest that the simple evaluation step outlined above would clearly indicate to an industry observer that any required activation display object was already stored on the mobile phone at purchase and does not need to be requested from the central server in order to activate and validate the ticket.

17. I attest that it would be unreasonable to assume that the Accused Products activate tickets differently in an internet connected state considering that any activation display is clearly stored on the mobile phone and may be activated in the internet disconnected state, especially considering that ticket activation typically occurs in places without internet access such as

underground subway terminals and this is typically specified as a requirement for requests for proposals in the mobile ticketing industry.

18. I attest that an investigation of the publically available operations of the Accused Products, including public presentations, company blog posts, sales proposals and the FAQ sections listed on the websites of the Accused Products, stating clearly that the Accused Products have been deliberately and specifically engineered to support offline activation of tickets would result in a technical determination that Accused Products operate according to different functions, in a different way, and yield a different results than the '967 and '993 Patents.

19. The '967 and '993 Patents provide different functions than the Accused Products for at least the following reasons:

The Accused Products do not verify purchase of a previously purchased electronic ticket or operate in dependence on the determination that the received token is valid. In contrast, the Accused Products activate tickets based on information already on the mobile device that was sent to the mobile device in response to the purchase request, rather than in response to any request to verify purchase.

20. The '967 and '993 Patents operate in a different way than the Accused Products for a least the following reasons:

After receiving a ticket from a server following a purchase transaction, the Accused Products do not activate tickets by contacting the server for validation. Instead, the Accused Products do not request any server validation or associated server determinations in favor of enhanced customer usability by providing a complete and activatable ticket immediately upon purchase.

21.  The '967 and '993 Patents yield a different result than the Accused Products for at least the following reasons:

After receiving a ticket from a server following a purchase transaction, the Accused Products activate tickets according to information already on the mobile device.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on  27 Mar 2017.                              _____

                                                                              Ben Whitaker