# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| BYTEMARK, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 2:16-cv-00543-JRG/RSP |
| | § | |
| MASABI LTD., | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |


**DEFENDANT MASABI'S INVALIDITY CONTENTIONS**
**CONCERNING U.S. PATENT NOS. 8,494,967 AND 9,239,993**

Pursuant to Local Patent Rules 3-3 and 3-4 and the Court's Docket Control Order (Dkt. # 28), Defendant Masabi Ltd. ("Defendant") hereby serves these Invalidity Contentions concerning U.S. Patent No. 8,494,967 ("the '967 Patent), 9,239,993 ("the '993 Patent") and (collectively the "Patents-in-Suit") accompanying document production on Plaintiff Bytemark, Inc. ("Bytemark"). These Invalidity Contentions, including the charts attached hereto as exhibits or Charts 1-14, specifically identify the prior art known to Defendant that anticipates and/or renders obvious the patent claims at issue – specifically claims 1-6, 17-23 and 34 of the '967 Patent and 1-17 and 22-24 of the '993 Patent (collectively, the "Asserted Claims") – under 35 U.S.C. §§ 102 and/or 103.[1]

These Invalidity Contentions also point out, as non-limiting examples, where in the prior art the claim elements are found, as well as exemplary rationales for one of ordinary skill

---

[1] When Bytemark filed its original complaint in May 2016 it only asserted a total of 4 claims.  Since then Masabi has filed a Rule 12(b)6 for failure to state a claim and in that motion Masabi moved, inter alia, to preclude Bytemark from asserting any new claims in this suit.  On September 20, 2016 Bytemark filed its Infringement Contentions and for the first time asserted 34 claims. On September 30,  2016 Bytemark filed a First Amended Complaint and asserted 34 claims. Masabi contests Bytemark's addition of 30 new claims.  As an abundance of caution, Masabi herein address all 34 claims.

combining the prior art. After describing the invalidity of the Asserted Claims in view of the prior art under 35 U.S.C. §§ 102 and/or 103, these Invalidity Contentions disclose various grounds of invalidity under 35 U.S.C. § 112(1) and (2) due to indefiniteness, lack of enablement, and/or lack of written description and under 35 U.S.C. § 101 for lack of patentable subject matter.

## I.   INTRODUCTION

On September 20, 2016, Plaintiff served it initial disclosures on Defendant, identifying claims 1-6, 17-23 and 34 of the '967 Patent and claims 1-17 and 22-24 of the '993 Patent as being infringed.  Plaintiff's Infringement Contentions do not provide adequate information for Defendant to use in preparing these Invalidity Contentions. Additionally, Plaintiff's Infringement Contentions are vague and conclusory concerning how the claim limitations allegedly read on the accused products or activities. Moreover, Plaintiff's Infringement Contentions fail to state any comprehensible theory of infringement under the doctrine of equivalents, instead reciting statements that lack specificity and fail to explain any theory of equivalence. Nor do Plaintiff's Infringement Contentions state any comprehensible theory of the supposed contributing to and/or inducing the alleged infringement.  As a result, Defendant is unable to discern Plaintiff's position regarding construction of claim limitations. In addition, Defendant may disagree with Plaintiff's interpretation of the meaning of terms and phrases in the Asserted Claims.

Defendant submits these Contentions without waiving any arguments about the sufficiency or substance of Plaintiff's Infringement Contentions, and without waiving any challenges to Plaintiff's apparent claim constructions. Based in whole or in part on the claim interpretations that Plaintiff appears to be asserting, and its alleged application of those interpretations to the accused instrumentalities, each cited prior art reference listed below anticipates and/or renders

obvious the asserted claims of the '967 and '993 patents, as described below and in the associated claim charts, attached hereto and incorporated by reference as if fully set forth herein.

Identifying these items of prior art and other defenses in connection with these Contentions does not serve as an admission that any alleged "Accused Instrumentality," including any current or past version of any alleged "Accused Instrumentality," is covered by, or infringes any of the asserted claims (or any other claims of the '967 or '993 patents), particularly when the asserted claims are properly construed. Further, Defendant's Contentions should not be construed as any admission regarding the proper construction of any asserted claim, should not be deemed to represent or limit the claim constructions that Defendant will advance in this action, and should not be deemed to relate to the non-infringement positions Defendant may advance in this action. Defendant's Contentions reflect Defendant's current knowledge, thinking, and contentions as of this early date in this action. Defendant's Contentions are based in whole or in part on their present understanding of the asserted claims and Plaintiff's apparent position as to the scope of the asserted claims as applied in its Local Patent Rule 3-1 disclosure. Accordingly, Defendant's Contentions (including the attached invalidity claim charts) reflect, to the extent possible, Plaintiff's expected alternative and potentially inconsistent positions as to claim construction and scope.

Defendant reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to modify and supplement, without prejudice, these Contentions. In addition, Defendant reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to raise additional prior art and invalidity defenses not included in these Contentions based on additional discovery or other issues raised by Plaintiff in this action or any related action. Defendant further reserves the right, to the extent permitted by the Court and the applicable

statutes and rules, to amend these Contentions should, for example, Plaintiff provide any information that it failed to provide in its Initial Disclosures and/or its Local Patent Rule 3-1 and 3-2 disclosures.

Further, because discovery has only recently begun, Defendant reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to revise, amend, and/or supplement the information provided herein, including identifying and relying on additional prior art references should Defendant's further search and analysis yield additional information or references, consistent with the Local Patent Rules and the Federal Rules of Civil Procedure. Defendant expressly reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to rely on witness testimony about the prior art references identified below to supplement these Contentions, where appropriate. Defendant also reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to revise their ultimate Contentions concerning the invalidity of the asserted claims, which may change depending upon the Court's construction of the asserted claims, any findings as to the priority date of the asserted claims, and/or positions that Plaintiff or its fact or expert witness(es) may take concerning claim construction, infringement, and/or invalidity issues.

To the extent that these Invalidity Contentions rely on or otherwise embody particular constructions of terms or phrases in the Asserted Claims, Defendant is not proposing any such constructions as proper constructions of those terms or phrases. The Court has established separate deadlines for Defendant's proposed constructions, and Defendant will disclose their constructions according to those deadlines. For purposes of these Invalidity Contentions, Defendant may adopt alternative, and even inconsistent, claim construction positions. In particular, certain of these Invalidity Contentions, including the charts attached hereto as

Charts 1-14, may be based on Plaintiff's apparent constructions as reflected in its Infringement Contentions. Defendant, however, does not admit that any constructions used within these Invalidity Contentions are proper, and Defendant reserves the right to contest any such constructions. Moreover, nothing herein admits in any way that any of Defendant's accused products or services, or any of Defendant's other products or services, infringes any of the Asserted Claims.

The accompanying invalidity claim charts list specific examples of where prior art references disclose, either expressly or inherently, each limitation of the asserted claims and/or examples of disclosures in view of which a person of ordinary skill in the art at the time each of the alleged inventions was made, would have considered each limitation, and therefore the claim as a whole, anticipated or obvious. The references, however, may contain additional support upon which Defendant may rely. The citations included in each chart are illustrative, not exhaustive. For any given quotation or excerpt, for example, Defendant expressly reserves the right to introduce other text and images (including but not limited to surrounding, related, or explanatory text, images, or un-cited portions of the prior art references) from the same or other prior art references that may help to provide context to the quotation or excerpt. Defendant may also rely on other documents and information, including cited references, prosecution histories for related patents/applications, including non-U.S. patents/applications and witness testimony to explain, amplify, illustrate, demonstrate, and provide context or aid in understanding the cited portions of the references.

Defendant also reserves the right to supplement or otherwise amend these Invalidity Contentions in response to any proposed claim constructions or alleged supporting evidence offered by Plaintiff, any report from any expert witness for Plaintiff regarding claim construction

issues, and any claim construction briefing filed by Plaintiff. Moreover, Defendant reserves the right to supplement or otherwise amend these Invalidity Contentions after the Court's claim construction ruling.

Throughout the attached Charts, Defendant provides citations of where references disclose subject matter recited in preambles, without regard to whether the preambles are limitations of the claims. Defendant reserves the right to argue that the preambles are or are not limitations.

Defendant's good faith effort to identify the particular portions of prior art references that correspond to all elements of the Asserted Claims is not an indication that any element is definite or is adequately described or enabled in the '993 or '967 Patents under 35 U.S.C. § 112, or is patentable subject matter under 35 U.S.C. § 101, especially in light of the broad and vague manner in which the claims are being asserted by Bytemark.

Defendant reserves all rights to supplement or amend these Invalidity Contentions under P.R. 3-6 if and when further information becomes available through discovery. Defendant further reserves the right to withdraw prior art from and/or add additional prior art to this disclosure as appropriate.

Finally, to the extent Bytemark successfully seeks leave to amend its Infringement Contentions or is otherwise permitted to allege infringement on any basis not set out in its Infringement Contentions, for example, to assert different claims, accuse different products, introduce different theories of infringement, rely on the doctrine of equivalents, or rely on different evidence, Defendant reserves their right to amend these Invalidity Contentions and/or present responsive evidence and arguments. Moreover, the ambiguity and lack of specificity in

Bytemark's Infringement Contentions have prevented Defendant from determining how Bytemark is interpreting or asserting claim elements of the '993 and '967 Patents. Accordingly, Defendant reserves the right to amend or supplement these initial Invalidity Contentions and the attached Charts if and when Bytemark points to or articulates which elements of the accused instrumentalities, if any, allegedly meet each and every claim limitation of the '993 or '967 Patents.

## II.  IDENTIFICATION OF PRIOR ART PURSUANT TO LOCAL PATENT RULE 3-3(A)

Pursuant to Local Patent Rule 3-3(a), and subject to Defendant's reservation of rights, each asserted claim of the '993 and '967 patents are anticipated and/or rendered obvious by the following prior art.  The following patents and publications, produced herewith, are prior art under at least 35 U.S.C. §§ 102(a), (b), (e), (g), and/or 35 U.S.C. § 103:

| Reference | '967 | '993 | Basis |
|---|---|---|---|
| WO 2009/141614 to Terrell | X | X | Anticipation |
| US 2004/0030658 to Cruz | X | X | Anticipation/obviousness |
| GB 2390211A to Stanford | X | X | Anticipation/obviousness |
| EP 1439495A1 to Roldan | X | X | Anticipation/obviousness |
| US2005/0070257 to Saarinen | X | X | Anticipation/obviousness |
| US2008/0071637 to Saarinen | X | X | Anticipation/obviousness |
| US2008/0191909 to Mak | X | X | Anticipation/obviousness |
| US2009/0125387 to Mak | X | X | Anticipation/obviousness |
| US2003/0093695 to Dutta | X | X | Anticipation/obviousness |
| US7,315,944 to Dutta | X | X | Anticipation/obviousness |
| US7,555,284 to Yan | X | X | Anticipation/obviousness |
| US8,788,836 to Hernacki | X | | Obviousness |
| US2002/0040346 to Kwan | X | X | Obviousness |
| US2002/0060246 to Gobburu | X | X | Obviousness |
| US2002/0184539 to Fukuda | X | X | Obviousness |
| US2003/0163787 to Hay | X | X | Obviousness |
| US2003/0200184 to Dominguez | X | X | Obviousness |
| US2006/0120607 to Lev | X | X | Obviousness |
| US2008/0288302 to Daouk | X | X | Obviousness |

| | | | |
|---|---|---|---|
| US2008/0308638 to Hussey | X | X | Obviousness |
| US2010/0219234 to Forbes | X | X | Obviousness |
| US6,175,922 to Wang | X | X | Obviousness |
| US8,370,180 to Scott | X | X | Obviousness |
| WO2007139348 to Choeng | X | X | Obviousness |
| WO2008113355 to Ventzel | X | X | Obviousness |
| WO2009141614 to Chapman | X | X | Obviousness |
| WO2014043810 to Stafford | X | X | Obviousness |
| ATOC Mobile Telephone Ticketing Layout Specification, 2008 | X | X | Obviousness |
| Improvement of urban passenger transport ticketing systems by deploying intelligent transport systems, 2006 | X | X | Obviousness |

In particular, see the prior art listed below and as set forth in the attached **Charts 1-14**.

1. PCT Publication No. WO 2009/141614 A1, to Alexander Terrell ("Terrell"), published November 26, 2009.  (See invalidity charts in **Charts 1-2**)

2. U.S. Publication No. US 2004/0030658, to Carmen Cruz ("Cruz"), published February 12, 2004. (See invalidity charts in **Charts 3-4**)

3. U.S. Pat. No. 7,315,944 to Dutta, et. al, ("Dutta"), issued January 1, 2008.  (See invalidity charts in **Charts 5-6**)

4. UK Patent application No. GB 2390211A to Christopher Stanford ("Stanford"), published December 31, 2003.  (See invalidity **Chart 7**)

5. European Patent Application No. EP1439495 A1 to Carman Santa Cruz Roldan ("Roldan"), published July 21, 2004.  (See invalidity charts in **Charts 8-9**)

6. U.S. Pat. No. 7,555,284 to Yan et. al, ("Yan"), issued June 30, 2009. (See invalidity charts in **Charts 10-11**)

7. U.S. Publication No. 2008/0191909 A1 to Michael Man Ho Mak ("Mak"), published August 14, 2008.  (See invalidity **Chart 12**)

8.      U.S. Publication No. 2005/0070257 A1 to Petteri Saarinen et. al. ("Sarrinen"), published March 31, 2005.  (See invalidity charts in **Charts 13-14**)

Defendant reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to assert that the asserted claims are invalid under 35 U.S.C. § 102(f) in the event Defendant obtains additional evidence that the named inventors of '993 and '967 patents did not invent (either alone or in conjunction with others) the subject matter claimed in the '993 and '967 patents. Should Defendant obtains such evidence, they will provide the name of the person(s) from whom, and the circumstances under which, the invention or any part of it was derived.

Defendant further intends to rely on admissions of the named inventors and Plaintiff concerning the prior art, including statements found in the '993 and '967 patents, its prosecution history, other related patents or patent applications, any deposition testimony, and the papers filed and any evidence submitted by Plaintiff in conjunction with this action. Finally, Defendant may rely on testimony from the named inventors listed on any of the above references.


III.    **ANTICIPATION AND OBVIOUSNESS REFERENCES PURSUANT TO LOCAL PATENT RULE 3-3(B)**

Subject to Defendant's reservation of rights, Defendant contends that the prior art references, as identified above and described in attached **Charts 1-14**, by themselves or in combination, render the asserted claims obvious under 35 U.S.C. § 103, as more specifically noted in said charts.

The cited portions of the prior art references are exemplary and representative of the content of the prior art references, and should be understood in the context of the reference as a

whole, as understood by one of ordinary skill in the art. To the extent a cited prior art reference is deemed not to anticipate or render obvious a claim as noted in the attached charts for failing to teach or suggest one or more limitations of that claim, that claim would nonetheless have been obvious to one of ordinary skill in the art at the time of the invention by the combination of the cited prior art reference with one or more other prior art references disclosing the missing claim limitations. For example, the 2008 Mak reference is listed in the charts in support of an alternate obviousness position with regard to several claims in combination with the Dutta and Saarinen invalidity positions.  However, any of Terrell, Cruz, Roldan, Saarinen, or Yan could be substituted for the 2008 Mak reference to arrive at the same obviousness position.  Similarly, several of the newly asserted dependent claims in the '967 patent and the '993 patent include recitations that are disclosed in multiple references of Terrel, Cruz, Stanford, Roldan, Dutta, Mak, Yan, and Saarinen.  These newly asserted claims are ambiguous and lack specificity in their language.  The vague and unclear assertions of infringement provided by Bytemark provide no clarity towards the Plaintiff's intended interpretation of these claims.  To the extent that these newly asserted and vague claims could be interpreted, combinations of the aforementioned references have been indicated in the charts to establish obviousness.  Other combinations are also contemplated to be possible.

A person of skill in the art would have been motivated to combine each of the referenced prior art. As the United Supreme Court held in KSR Int'l Co. v. Teleflex Inc., "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." 127 U.S. 1727, 1731 (2007). The Supreme Court further held that, "[w]hen a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of

ordinary skill can implement a predictable variation, §103 likely bars its patentability. For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill. . . ." *Id*. at 1740. Accordingly, a person of skill in the art would have been motivated to combine or adapt known or familiar methods in the art, especially where market forces prompt such variations. In the present case, to the extent that market forces demanded the expediency and convenience of mobile phone electronic ticketing while simultaneously requiring the security and fraud prevention of secure purchase and ticket delivery, one skilled in the art would have thought to combine or modify references that describe known methods that one of skill in the art would have recognized as offering improvements to the mobile ticketing ecosystem.  Each of the above references disclose methods and systems related to improving the security and ease of delivering electronic tickets to mobile devices.  Accordingly, one of skill in the art would have been motivated to combine or modify the references as identified in each of the above combinations.

Moreover, the Supreme Court held that "familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 1742. The Supreme Court further held that it is sufficient that a combination of elements was "obvious to try," holding that, "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." *Id.* In this instance, the technology offered

a limited number of basic encryption and validation methodologies for delivery and usage of electronic tickets, and thus one of skill in the art would have thought to combine references that described preferred known electronic ticket security protocols to arrive at the asserted claims.

Motivation to combine may also be found in the "nature of the problem." *Id.* at 1734. As stated identically in both the '967 patent as well as the '993 patent, the alleged inventors were attempting to solve an existing need "for an electronic ticketing system that provides a human-perceivable visual display that the venue can rely on to verify the ticket. ('967 patent, col 1, ln 38-40; '993 patent, col 1, ln 41-43).  Furthermore, both the '967 patent and the '993 patent sought to provide a system "for the distribution of an electronic ticket that also contains a visual display that ticket takers can rely on as verification, without using a scanning device." ('967 patent, col. 1, ln 41-43; '993 patent, col. 1, ln 44-46).  Accordingly, one of ordinary skill in the art would have been motivated to combine references that were directed at such subject matter, and thus would have been motivated to combine all of the references as identified in the above combinations. Accordingly, the teaching, suggestion, or motivation to modify or combine the references in the manner claimed can be found in the explicit and/or implicit teachings of the references and the prior art as a whole, the general knowledge of those skilled in the art, including knowledge of trends in the field, and knowledge that the art is of special interest or importance in the field, and from the fact that all of the references concern electronic ticketing on mobile phones that incorporates visual displays recognizable by a ticket taker without utilization of a scanning device, and one of ordinary skill in the art would be motivated by such obvious considerations as speed and efficiency, and other concerns common to the speed and ease of validating electronic tickets utilized in transit, to combine the various teachings to arrive at the claimed invention. Stated differently, the references above demonstrate that there was, at the

time of the alleged invention, a finite number of identified, predictable solutions for not only validating electronic tickets utilized in transit but also in securing such tickets to prevent unwarranted copying or fraud that persons of ordinary skill in the art would have known how to successfully combine, making the claimed invention obvious.

Defendant may rely upon a subset of references or all of the references depending upon the Court's claim construction and further investigation. Defendant's contentions that the references in this section, in various combinations, render the asserted claims of the patent-in-suit obvious under 35 U.S.C. § 103 are in no way an admission or suggestion that each reference does not independently anticipate the asserted claims under 35 U.S.C. § 102. Any of the references disclosed herein may be combined with other references disclosed herein to render obvious, and therefore invalid, each of the asserted claims of the patent-in-suit. In particular, the asserted claims of the patent-in-suit are rendered obvious under 35 U.S.C. § 103 in view of at least, and without limitation, the following references or combinations of references and reasons to combine:

**A.  Terrell– PCT Publication No. WO 2009/141614 A1 (Charts 1-2)**

Terrell alone anticipates all of the asserted claims of the '967 patent and the '993 patent. Thus, all asserted claims are invalid and unenforceable.  Charts 1 and 2, incorporated by reference, disclose the basis for anticipation of the asserted claims of the '967 patent and the '993 patent respectively.   Terrell is directed towards a method of electronic ticketing in which an image is displayed by a mobile device that is eye-readable for inspection purposes. (Abstract). Terrell discloses a method by a server system for obtaining visual validation of the possession of a purchased electronic ticket on a user's computer device for presentation to a ticket taker as claimed in the '967 patent and a method performed by a computer system for displaying visual

13

validation of the possession of a previously purchased electronic ticket for utilization of a service monitored by a ticket taker as claimed in the '993 patent. *Id.*

Terrell discloses requesting verification to obtain a visual validation display object as claimed in independent claims 1, 17 and 18 of the '967 patent and independent claims 1 and 8 of the '993 patent.  Terrell discloses providing a "ticket is provided to the mobile device in a non-validated form, and is validated in a separate transaction initiated by the user." (pg. 18, ln 8-10; Figure 16).  Terrell discloses "In addition, in place of the button 1109 (shown in Figure 11) the nonvalidated ticket of Figure 16 has a validation button 1602 allowing the user of the mobile device to request, from the server 101, the validation of a ticket having a specified unique ticket number." (pg 18, ln 27 – 30).  Terrell discloses the transmission of a token, the checking of a database on the issuing server for said token, the validation of said token, and the sending of a visual validation display object in response to a determination of validity.  "Upon receiving the request the server responds by assembling the required data, including date, code for the day, "valid to" time, and generating the corresponding barcode data, as previously described. The assembled data and the barcode data are then transmitted to the requesting mobile device, so that the application can update the pre-validation ticket to a validated ticket (such as that shown in Figures 11 and 12." (pg 18, ln 30 – pg. 19, ln 5).  Terrell discloses that these tokens may be comprised of alphanumeric characters "to request, from the server 101, the validation of a ticket having a specified unique ticket number." (pg 18, ln 29 – 30).  And Terrell discloses preventing the device from displaying the visual validation object in response to an invalid determination:

"The graphical information part of the ticket, shown in Figure 16 is similar to that of a valid ticket but does not show the "valid to" time 1102 (as shown in Figure 11). Instead, the words "not validated" are displayed. Also, as the "valid to" time was not included in the ticket data

14

the displayed graphical information also does not show a decrementing "valid for" time.

Furthermore, the ticket does not include a date or corresponding "code for the day"." (pg. 18,

ln 19-26).

In short, Terrell anticipates each and every element recited in independent claims 1, 17 and

18 of the '967 patent and independent claims 1 and 8 of the '993 patent.  They are invalid.

Similarly, Terrell anticipates each and every claim element recited in the dependent claims of

the '967 patent and the '993 patent.  Although specific support for these assertions are presented

in the accompanying charts, a brief synopsis will be presented here.  Claims 2 and 19 of the '967

patent and claim 23 of the '993 patent include limitations that appear to encompass the sending

of the validated ticket upon purchase.  At least one embodiment disclosed in Terrell discloses

precisely this scenario.  "In the above-described embodiment, it is envisaged that validated

tickets will always be supplied to the mobile devices." (pg. 18, ln 7-8).  Claims 2 and 19 of the

'967 patent and claim 23 of the '993 patent are anticipated by Terrell.

Claims 3 and 20 of the '967 patent and claim 22 of the '993 patent include limitations

pursuant to allowing validation of the ticket only during a predetermined time.  Terrell clearly

discloses the incorporation of a temporal validity time into its visual validation:

> "the graphical information part includes data defining a unique ticket number (as stored in
>
> the Verification database 111), a date relating to the event for which the ticket was bought, a
>
> code for the day, a "valid to" time (an expiry time for the validation of the ticket)" (pg. 9, ln
>
> 21-24)

Claims 3 and 20 of the '967 patent and claims 22 of the '993 patent are anticipated by Terrell.

Claims 4-6 and 21-23 of the '967 patent and claims 4-7, 10, and 14 of the '993 patent

include limitations pursuant to encrypting and decrypting the visual validation object to increase

the security of the system.  Terrell discloses identical security protocols for protecting the visual display object:

> "As illustrated in Figure 7, with the exception of the unique ticket number, the data in the barcode part of the ticket is digitally signed using a private authentication key of an asymmetric (public) key pair." (pg. 10, ln 2-5)

Claims 4-6 and 21-23 of the '967 patent and claims 4-7, 10, and 14 of the '993 patent are anticipated by Terrell.

Claim 34 of the '967 patent and claims 15-17 of the '993 patent include limitations pursuant touch screen activation of the visual validation objection on the mobile device.  Terrell describes the animated effects described in these limitations:

> "Thus, at step 802 the graphical information defined by the graphical information part of the ticket data is displayed in accordance with the requirements of the application. Specifically, the application requires at least one graphic element to be animated. That is, at least one graphic element must have a change in appearance, such as by movement, change in form, change in colour, change in size, etc. It may be noted that in the present embodiment the graphical information includes an animated graphical element in the form of a decrementing timer and two interchanging logos that move across the top of the screen." (pg. 10, ln 23 – pg. 11, ln 3)

Terrell further depicts such activation based on an identical mobile phone i/o system:



*Figure 16*

Claim 34 of the '967 patent and claims 15-17 of the '993 patent are anticipated by Terrell.

For the reasons stated above, the asserted claims are anticipated and or rendered obvious by Terrell.  It should be understood that a complete anticipation citation list for all asserted claims of the '967 patent and the '993 patent may be found in the accompanying charts.  Masabi reserves the right to correct, amend, and supplement these charts as Bytemark's position on infringement, claim interpretation, and validity has not been adequately disclosed.

### B.  Cruz- U.S. Publication No. US 2004/0030658, to Carmen Cruz (Charts 3-4)

Claims 1, 3-6, 17-18, 20-23, and 34 of the '967 patent are invalid as they are anticipated by Cruz.  Cruz further renders claims 2 and 19 of the '967 patent obvious in view of any of Terrell, Stanford or Saarinen.  Cruz anticipates all the asserted claims of the '993 patent.  Charts 3 and 4, incorporated by reference, disclose the basis for anticipation and obviousness of the asserted claims of the '967 patent and the '993 patent respectively. Cruz discloses a system for the delivery and verification of a modular electronic ticket incorporating a ticket data object (abstract).  The ticket data object may "be an optically or visually recognizable pattern." [0061].  Cruz clearly discloses the visual validation ticketing systems described in the recited claims of the '967 patent and the '993 patent.  Cruz discloses sending a request, token transmission,

17

validation of the token, and transmission of the visual validation object upon determination of validity [0091].  Additionally, Cruz discloses the use of an alphanumeric token [0061] as claimed in the '993 patent.

Cruz does not specifically discuss confirming a purchase and sending a visual validation display object in dependence of a determination that a token has not been stored as recited in claims 2 and 19 of the '967 patent.  However, at least these additional references do disclose this claim limitation:  Terrell, Stanford, and Saarinen.  Cruz, Terrell, Stanford, and Saarinen all are directed toward the secure purchasing and transmission of electronic tickets to mobile devices.  It would be obvious and highly motivating to determine if a ticket has already been sold prior to attempting to sell it to a new requester.  One skilled in the art would be motivated to check that a ticket has not already been registered as sold prior to selling and delivering a ticket to a new purchase request to prevent fraud as well as to reduce financial losses to the ticket issuer.  It would, therefore, be obvious to combine the methods disclosed in Terrell, Stanford, or Saarinen with the electronic ticketing of Cruz to further increase the security of ticket purchasing and transmission to which Cruz is directed.  Claims 2 and 19 of the '967 patent are therefore invalid as obvious over Cruz in view of any of Terrell, Stanford, or Saarinen.

For the reasons stated above, the asserted claims are anticipated and or rendered obvious by Cruz.  It should be understood that a complete anticipation citation list for all asserted claims of the '967 patent and the '993 patent may be found in the accompanying charts.  Masabi reserves the right to correct, amend, and supplement these charts as Bytemark's position on infringement, claim interpretation, and validity has not been adequately disclosed.

### C.  Stanford - UK Patent application No. GB 2390211A to Stanford (Chart 7)

Claims 1-2, 4-5, 17-19, and 21-22 of the '967 patent are invalid as they are anticipated by Stanford.   Stanford renders claims 3 and 20 of the '967 patent obvious in view of any of Terrell, Cruz, Dutta or Saarinen.  Stanford renders claims 6 and 23 of the '967 patent obvious in view of any of Terrell, Cruz, Roldan, Dutta, or Saarinen.  Stanford renders claim 34 of the '967 patent obvious in view of any of Terrell, Cruz, Roldan, or Saarinen.  Chart 7, incorporated by reference, discloses the basis for anticipation and obviousness of the asserted claims of the '967 patent. Stanford discloses a method of providing electronic tickets to mobile devices that includes "bespoke animations may be used, or an authentication character string may be displayed." (pg. 15, 3rd full paragraph).  The system receives a token along with a request that is utilized by the ticketing system to generate a valid secret character string that is sent back to the mobile device. (pg. 15, last full paragraph).

Stanford does not specifically recite the transmitted data having a "predetermined lock time" as recited in claims 3 and 20 of the '967 patent.  Stanford is directed towards providing a secure authentication method for use in low cost electronic ticketing applications (pg. 3, first full paragraph).  Terrell, Cruz, Dutta and Saarinen all disclose the use of a predetermined lock time to control the permission of a visual validation display object.  One skilled in the art would be motivated to include the temporal restrictions on validation presented in Terrell, Cruz, Dutta and Saarinen within the method disclosed in Stanford as it would further increase the secured authentication of  mobile ticketing that Stanford is directed towards.  For at least this reason, claims 3 and 20 are invalid as obvious over Stanford in view of any of Terrell, Cruz, Dutta and Saarinen.

Stanford does not specifically discuss the public/private key encryption limitations recited in claims 6 and 23 of the '967 patent.  As mentioned, however, Stanford is directed towards providing a secure authentication method for use in low cost electronic ticketing applications (pg. 3, first full paragraph).  Terrell, Cruz, Roldan, Dutta, and Saarinen all disclose encryption, including public/private key pairings, for protecting transmitted electronic tickets.  One skilled in the art would be motivated to include this well known encryption procedure presented in Terrell, Cruz, Roldan, Dutta, and Saarinen within the method disclosed in Stanford as it would further increase the secured authentication of  mobile ticketing that Stanford is directed towards.  For at least this reason, claims 6 and 23 are invalid as obvious over Stanford in view of any of Terrell, Cruz, Roldan, Dutta, and Saarinen.

Stanford does not specifically recite the visual validation display object that is an animation that operates in reaction to the touch of the user's computer device screen as recited in claim 34 of the '967 patent.  However, Terrell, Cruz, Roldan, or Saarinen all disclose the recitations of this claim.  Furthermore, since at least the first Iphone was released in 2007, and well before, the use of a touchscreen as an input for a mobile device to effectuate application control has been commonplace and desirable.  One skilled in the art would be motivated to include such i/o features taught in Terrell, Cruz, Roldan, or Saarinen in Stanford as it provides a simple, well known, and desirable ease of operation.  For at least this reason, claim 34 is invalid as obvious over Stanford in view of any of Terrell, Cruz, Roldan, or Saarinen.

For the reasons stated above, the asserted claims are anticipated and or rendered obvious by Stanford.  It should be understood that a complete anticipation citation list for all asserted claims of the '967 patent may be found in the accompanying charts.  Masabi reserves the right to

correct, amend, and supplement these charts as Bytemark's position on infringement, claim interpretation, and validity has not been adequately disclosed.

### D.  Roldan - European Patent Application No. EP1439495 A1 to Roldan (Charts 8-9)

Claims 1, 4-6, 17-18, 21-23, and 34 of the '967 patent are invalid as they are anticipated by Roldan.  Roldan renders obvious claims 2 and 19 of the '967 patent in view of any of Terrell, Stanford or Saarinen.  Roldan renders obvious claims 3 and 20 of the '967 patent in view of any of Terrell, Cruz, Dutta, or Saarinen.  Roldan, in the alternative, renders obvious claim 34 of the '967 patent.  Roldan anticipates claims 1-17, 23 and 24 of the '993 patent.  Roldan renders obvious claim 22 of the '993 patent in view of any of Terrell, Cruz, Dutta, or Saarinen.  Charts 8 and 9, incorporated by reference, disclose the basis for anticipation and obviousness of the asserted claims of the '967 patent and the '993 patent respectively.  Roldan is directed towards an electronic ticket issuing system [0023] that incorporates a visual validation element [0060].  Roland utilizes multiple ticket identifiers for purchase, storage, and validation [0104-107].

Roldan does not specifically discuss confirming a purchase and sending a visual validation display object in dependence of a determination that a token has not been stored as recited in claims 2 and 19 of the '967 patent.  However, at least these additional references do disclose this claim limitation:  Terrell, Stanford, and Saarinen.  Roldan, Terrell, Stanford, and Saarinen all are directed toward the secure purchasing and transmission of electronic tickets to mobile devices.  It would be obvious and highly motivating to determine if a ticket has already been sold prior to attempting to sell it to a new requester.  One skilled in the art would be motivated to check that a ticket has not already been registered as sold prior to selling and delivering a ticket to a new purchase request to prevent fraud as well as to reduce financial losses to the ticket issuer.  It would, therefore, be obvious to combine the methods disclosed in Terrell, Stanford, or Saarinen

21

with the electronic ticketing of Roldan to further increase the security of ticket purchasing and transmission to which Roldan is directed.  Claims 2 and 19 of the '967 patent are therefore invalid as obvious over Roldan in view of any of Terrell, Stanford, or Saarinen.

Roldan does not specifically recite the transmitted data having a "predetermined lock time" as recited in claims 3 and 20 of the '967 patent.  Roland is directed towards providing secured copy-protected electronic ticketing [0023].  Terrell, Cruz, Dutta and Saarinen all disclose the use of a predetermined lock time to control the permission of a visual validation display object.  One skilled in the art would be motivated to include the temporal restrictions on validation presented in Terrell, Cruz, Dutta and Saarinen within the method disclosed in Roldan as it would further increase the secured authentication of  mobile ticketing that Roldan is directed towards.  For at least this reason, claims 3 and 20 are invalid as obvious over Roldan in view of any of Terrell, Cruz, Dutta and Saarinen.

Roldan does not specifically recite the visual validation display object that is an animation that operates in reaction to the touch of the user's computer device screen as recited in claim 34 of the '967 patent.  However, Roldan does disclose the use of a mobile phone i/o to control display of a visual validation object:

> "The mobile device 102 includes input/output I/O means 260 which include receiving means 263, sending means 262, and a display 261. The receiving means 263 include means with which the mobile device 102 can receive any data from a mobile network 100A, from another mobile device 103, from the user of the mobile device 102, from inspection system 106, ticket issuing system 101, and so on. The receiving means 263 can comprise a keyboard, wireless communication means, touch screen, joystick, speech recognition system adapted to work with a microphone, and so on." [0044].

22

Touchscreens are well known input/output means as taught by Roldan.  Since at least the first Iphone was released in 2007, and well before, the use of a touchscreen as an input for a mobile device to effectuate application control has been commonplace and desirable.  One skilled in the art would be motivated to include touch screen activation as a standard substitution for the i/o features taught in Roldan as it provides a simple, well known, and desirable ease of operation.  For at least this reason, claim 34 is invalid as anticipated or in the alternative obvious over Roldan.

Roldan does not specifically recite a secured validation display configured to display in different versions of appearance on a pre-determined schedule as recited in claim 24 of the '993 patent.  Roland is directed towards providing secured copy-protected electronic ticketing [0023].  Terrell, Cruz, Dutta and Saarinen all disclose the use of temporal controls to control the visual validation display object.  One skilled in the art would be motivated to include the temporal controls presented in Terrell, Cruz, Dutta and Saarinen within the method disclosed in Roldan as it would further increase the secured authentication of  mobile ticketing that Roldan is directed towards.  For at least this reason, claim 22 of the '993 patent is invalid as obvious over Roland in view of any of Terrell, Cruz, Dutta and Saarinen.

For the reasons stated above, the asserted claims are anticipated and or rendered obvious by Roldan.  It should be understood that a complete anticipation citation list for all asserted claims of the '993 and '967 patents may be found in the accompanying charts.  Masabi reserves the right to correct, amend, and supplement these charts as Bytemark's position on infringement, claim interpretation, and validity has not been adequately disclosed.

### E.  Dutta - U.S. Pat. No. 7,315,944 to Dutta, et. al. (Charts 5-6)

Claims 1, 3-6, 17-18 and 20-23 of the '967 patent are invalid as they are anticipated by Dutta. Dutta renders obvious claims 2 and 19 of the '967 patent in view of any of Terrell, Stanford or Saarinen.  Dutta renders obvious claim 34 of the '967 patent in view of any of Terrell, Cruz, Roldan or Saarinen.  See Charts 5-6. Dutta is directed towards a secure electronic ticketing system that employs rapid verification tokens (RVT) that are recognizable by a human operator (col 12, ln 6-12).  Dutta discloses seeking validation of the ticket prior to issuance of the rapid verification token:  "If the electronic ticket 18 being redeemed at the TRS 14 is a one-time use ticket, the TRS 14 verifies that the ticket is valid and provides a signal or other indication to an associated system that the presenter of the ticket 18 should be granted access to the goods or service corresponding to the received ticket 18, or that a RVT should be issued." (col 9, ln 59-64).

Dutta does not specifically discuss confirming a purchase and sending a visual validation display object in dependence of a determination that a token has not been stored as recited in claims 2 and 19 of the '967 patent.  However, at least these additional references do disclose this claim limitation:  Terrell, Stanford, and Saarinen.  Dutta, Terrell, Stanford, and Saarinen all are directed toward the secure purchasing and transmission of electronic tickets to mobile devices.  It would be obvious and highly motivating to determine if a ticket has already been sold prior to attempting to sell it to a new requester.  One skilled in the art would be motivated to check that a ticket has not already been registered as sold prior to selling and delivering a ticket to a new purchase request to prevent fraud as well as to reduce financial losses to the ticket issuer.  It would, therefore, be obvious to combine the methods disclosed in Terrell, Stanford, or Saarinen

with the electronic ticketing of Dutta to further increase the security of ticket purchasing and

transmission to which Dutta is directed.  Claims 2 and 19 of the '967 patent are therefore invalid

as obvious over Dutta in view of any of Terrell, Stanford, or Saarinen.

Dutta does not specifically describe that the visual validation display object is an animation

that operates in reaction to the touch of the user's computer device screen as recited in claim 34

of the '967 patent.  However, Terrell, Cruz, Roldan, or Saarinen all disclose the recitations of

this claim.  Furthermore, since at least the first Iphone was released in 2007, and well before, the

use of a touchscreen as an input for a mobile device to effectuate application control has been

commonplace and desirable.  One skilled in the art would be motivated to include such i/o

features taught in Terrell, Cruz, Roldan, or Saarinen in Dutta as it provides a simple, well known,

and desirable ease of operation.  For at least this reason, claim 34 is invalid as obvious over

Dutta in view of any of Terrell, Cruz, Roldan, or Saarinen.

For the reasons stated above, the asserted claims are anticipated and or rendered obvious by

Dutta.  It should be understood that a complete anticipation citation list for all asserted claims of

the '967 patent may be found in the accompanying charts.  Masabi reserves the right to correct,

amend, and supplement these charts as Bytemark's position on infringement, claim

interpretation, and validity has not been adequately disclosed.

### F.  Dutta/Mak - U.S. Pat. No. 7,315,944 to Dutta, et. al. and U.S. Publication No. 2008/0191909 A1 to Mak (Exhibit 12)

Claims 1-15, and 22-24 of the '993 patent are invalid as they are anticipated by Dutta.

Alternately, Dutta renders claims 1-11 obvious in view of Mak.   Dutta renders claims 16 and 17

of the '993 patent obvious in view of any of Terrell, Cruz, Roldan, or Saarinen.  Dutta discloses

seeking validation of the ticket prior to issuance of the rapid verification token: "If the electronic

ticket 18 being redeemed at the TRS 14 is a one-time use ticket, the TRS 14 verifies that the ticket is valid and provides a signal or other indication to an associated system that the presenter of the ticket 18 should be granted access to the goods or service corresponding to the received ticket 18, or that a RVT should be issued." (col 9, ln 59-64).

Dutta discloses sending a request including a PTD certificate from the mobile phone (col. 8, ln 8-10), verifying the certificate and in response sending an electronic ticket (col. 8, ln 11-17). Although Dutta does not specifically utilize the term "alphanumeric", the use of such tokens and certificates has been ubiquitous since the dawn of computer programming.  To the extent that Bytemark could theoretically put forth the specious argument that the fact that the token claimed to be alphanumeric bears some novelty, it is noted that the use of alphanumeric tokens in mobile ticketing is disclosed in Mak.  One skilled in the art would be motivated to combine Mak with Dutta for the simple substitution of known element ids.  In the same vein as a simple choice of a six number numeric id for a ticket may be substituted for a five number numeric id to improve security, so too would it be obvious to utilize alphanumeric ids to further increase security.  For at least this reason, claims 1-11 of the '993 patent are invalid as they are obvious over Dutta in view of Mak.

Dutta does not specifically recite touching a predetermined area of the mobile phone or pressing a button on the screen of a mobile phone to actuate the visual validation as claimed in claims 16 and 17 of the '993 patent.  Terrell, Cruz, Roldan and Saarinen all describe actuation of visual validation elements based on interaction with the mobile phone i/o and Terrell even specifically depicts an on-screen validation button.  Since at least the first Iphone was released in 2007, and well before, the use of a touchscreen as an input for a mobile device to effectuate application control has been commonplace and desirable.  One skilled in the art would be

26

motivated to include such i/o features taught in Terrell, Cruz, Roldan, or Saarinen in Dutta as it provides a simple, well known, and desirable ease of operation.  For at least this reason, claims 16 and 17 are invalid as obvious over Dutta in view of any of Terrell, Cruz, Roldan, or Saarinen.

For the reasons stated above, the asserted claims are anticipated and or rendered obvious by Dutta/Mak.  It should be understood that a complete anticipation citation list for all asserted claims of the '993 patent may be found in the accompanying charts.  Masabi reserves the right to correct, amend, and supplement these charts as Bytemark's position on infringement, claim interpretation, and validity has not been adequately disclosed.

### G. Yan - U.S. Pat. No. 7,555,284 to Yan et. al, (Charts 10-11)

Claims 1, 4-5, 17-18, and 21-22 of the '967 patent are invalid as they are anticipated by Yan. Yan renders obvious claims 2 and 19 of the '967 patent in view of any of Terrell, Stanford or Saarinen.  Yan renders obvious claims 3 and 20 of the '967 patent in view of any of Terrell, Cruz, Dutta, or Saarinen.  Yan, in the alternative, renders obvious claim 34 of the '967 patent in view of any of Terrell, Cruz, Roldan or Saarinen.  Claims 1-14 and 23 of the '993 patent are anticipated by Yan.  Yan renders obvious claims 15-17 of the '993 patent in view of any of Terrell, Cruz, Roldan, or Saarinen.  Yan renders obvious claims 22 and 24 of the '993 patent invalid as obvious in view of any of Terrell, Cruz, Dutta, and Saarinen.  See Charts 10-11.  Yan is directed towards a "digitally encrypted ticket for use in a mobile network for display on a mobile telecommunications device wherein the ticket comprises image data that has been digitally watermarked. The watermarking may be visible or invisible. The image data may include an image of the user." (Col 2, ln 26-32, figure 1).



Fig. 1

Yan does not specifically recite the touchscreen capabilities recited in claims 15-17 of the '993 patent.  However, Terrell, Cruz, Roldan, or Saarinen all disclose the recitations of these claims.  Furthermore, since at least the first Iphone was released in 2007, and well before, the use of a touchscreen as an input for a mobile device to effectuate application control has been commonplace and desirable.  One skilled in the art would be motivated to include such i/o features taught in Terrell, Cruz, Roldan, or Saarinen in Yan as it provides a simple, well known, and desirable ease of operation.  For at least this reason, claims 15-17 are invalid as obvious over Yan in view of any of Terrell, Cruz, Roldan, or Saarinen.

Yan does not specifically recite the visual validation object to vary according to a predetermined schedule as recited in claim 22 of the '993 patent or to be unique to individual devices as recited in claim 24 of the '993 patent.  However, Terrell, Cruz, Dutta and Saarinen all teach these limitations.  Yan, in addition to Terrell, Cruz, Dutta, and Saarinen, are all directed towards improving the security of electronic ticketing on mobile phones.  One skilled in the art would be motivated to combine the predetermined time constraints and device dependent variations as taught in Terrell, Cruz, Dutta and Saarinen with the method disclosed in Yan as it would be obvious to further increase the desired security of electronic ticketing on mobile phones.  For at least this reason, claims 22 and 24 of the '993 patent are invalid as obvious over Yan in view of any of Terrell, Cruz, Dutta and Saarinen.

For the reasons stated above, the asserted claims are anticipated and or rendered obvious by Yan.  It should be understood that a complete anticipation citation list for all asserted claims of the '967 patent and the '993 patent may be found in the accompanying charts.  Masabi reserves the right to correct, amend, and supplement these charts as Bytemark's position on infringement, claim interpretation, and validity has not been adequately disclosed.

### H.  Mak - U.S. Publication No. 2008/0191909 A1 to Mak (Chart 12 )

Claims 1-2, 8-9, and 13-14 of the '993 patent are anticipated by Mak.  Mak renders claims 3-7, 10-12, 15-17, 22, and 24 of the '993 patent obvious in view of any of Terrell, Cruz, Roldan, Saarinen, or Yan.  Chart 12, incorporated by reference, discloses the basis for anticipation of the '993 patent.  Mak discloses "the transmission of alphanumeric codes to a client device such as a mobile telephone having a visible area adapted to display alphanumeric characters. The invention also teaches encoding, transmission, optical character recognition (OCR) techniques and data recovery techniques that are particularly adapted to read and interpret the alphanumeric codes that are displayed.  It will be understood that the client device is not limited to mobile telephones. Similarly the invention is described as being useful in, but not limited to, ticketing applications."  (Para [0002].)  Mak further discloses that "[t]he ticket verification service 1215 authenticates the verification request 1214 in order to ensure that it has been transmitted by an authorized ticket scanner 1213. Authentic requests cause a lookup 1216 of the tickets database 1207. In the case that the lookup confirms a valid N-Code ticket has been presented the verification service indicates this in its reply to the scanner 1213." (Para [0076].)  Thus, Mak discloses transmitting and validating a token that is a unique alphanumeric string and securing, transmitting, and enabling or preventing display of a validation display object upon validation of

the token (Para [0021]; [0062]; [0065]-[0067]; [0071]; [0074]-[0076]; figures 2 and 12) as claimed in the '993 patent.   Claims 1-2, 8-9, and 13-14 of the '993 patent are therefore invalid as anticipated by Mak.

To the extent that Mak does not specifically recite transmitting the validation display object prior to receiving the request for verification as recited by claims 3 and 11 of the '993 Patent, Terrell, Cruz, Roldan, Dutta, and Saarinen all disclose transmitting a visual validation display object prior to receiving a request for verification. Mak and other references are all directed towards the security of electronic ticket transmission.  One skilled in the art would be motivated to employ the delayed verification as disclosed in Terrell, Cruz, Roldan, Dutta, or Saarinen in the ticket verification of Mak as it as it allows for delayed verification and activation so as to increase security and allow more time for ticket verification.  It would, therefore, have been obvious to combine the delayed verification of Terrell, Cruz, Roldan, Dutta, or Saarinen with the ticket verification of Mak.  Claims 3 and 11 of the '993 Patent are therefore invalid as obvious over Mak in view of any of Terrell, Cruz, Roldan, or Saarinen.

For the reasons stated above, the asserted claims are anticipated and or rendered obvious by Mak. It should be understood that a complete anticipation citation list for all asserted claims of the '967 patent and the '993 patent may be found in the accompanying charts.  Masabi reserves the right to correct, amend, and supplement these charts as Bytemark's position on infringement, claim interpretation, and validity has not been adequately disclosed.  All asserted claims are invalid.

## I.   Saarinen - U.S. Publication No. 2005/0070257 A1 to Saarinen (Charts 13-14)

Claims 1-23, and 34 of the '967 patent and claims 1-17 and 22-24 of the '993 patent re invalid as they are anticipated by Saarinen.  Saarinen alternatively renders claims 1-10 of the

'993 patent obvious in view of any of Mak, Terrell, Cruz, Roldan, or Yan. Charts 13 and 14, incorporated by reference, disclose the basis for anticipation and obviousness of the '967 patent and the '993 patent respectively. Saarinen discloses "[a] method and apparatus is provided for providing an active ticket in a mobile terminal for use by a mobile terminal user, wherein at least one active ticket has a ticket characteristic that dynamically changes based on one or more states in a life cycle of the active ticket." Saarinen further discloses that " dynamic changes to the ticket characteristic include multimedia changes or other presentation data, including text, sound (audio), animation, video, still pictures, or some combination thereof" and that "[t]he active ticket can have different states in its life cycle, such as purchased, validated, invalid for certain events." (Abstract.) Saarinen further discloses a token based on International Mobile Equipment Identification (IMEI) code, terminal or subscriber identification, and mobile information device (MID) data. (Para [0049]; [0088].) Saarinen clearly discloses the visual validation ticketing systems described in the recited claims of the '967 patent and the '993 patent. Saarinen discloses receiving a request, token transmission, validation of the token, and transmission of the visual validation object upon determination of validity (Para [0116]-[0136]; figures 8a-8c) as claimed in the '967 patent. Additionally, Saarinen discloses the use of a unique token (Para [0049]; [0088]; [0116]-[0136]) as claimed in the '993 patent. For at least the reasons above, claims 1-6, 17-23, and 34 of the '993 patent are therefore invalid as anticipated by Saarinen.

Although Saarinen discloses a unique token based on various identification numbers, to the extent that Saarinen does not expressly state an "alphanumeric" string as recited in claims 1 and 8 of the '993 patent, the use and interchangeability of numeric and alphanumeric strings was well known to one skilled in the art as evidenced by any of Mak, Terrell, Cruz, Roldan, or Yan. Mak, Terrell, Cruz, Roldan, and Yan are all directed toward the secure purchasing and transmission of

31

electronic tickets to mobile devices.  Further, use of an alphanumeric string rather a numeric string involves the simple substitution of obvious and well known identification methods.  Thus, it would be obvious and highly motivating to utilize an alphanumeric token of Mak, Terrell, Cruz, Roldan, or Yan, for example, to increase character combinations so as to provide greater security for the purchasing and transmission of electronic tickets to which Saarinen is directed.  It would, therefore, be obvious to combine the alphanumeric strings of Mak, Terrell, Cruz, Roldan, or Yan with the electronic ticketing of Saarinen.  Claims 1 and 10 of the '993 patent are therefore invalid as obvious over Saarinen in view of any of Mak, Terrell, Cruz, Roldan, or Yan.

For the reasons stated above, the asserted claims are anticipated and or rendered obvious by Saarinen.  It should be understood that a complete anticipation citation list for all asserted claims of the '967 patent and the '993 patent may be found in the accompanying charts.  Masabi reserves the right to correct, amend, and supplement these charts as Bytemark's position on infringement, claim interpretation, and validity has not been adequately disclosed.  All asserted claims are invalid.


## IV.   PRELIMINARY INVALIDITY CHARTS PURSUANT TO LOCAL PATENT RULE 3-3(C)

Pursuant to Local Patent Rule 3-3(c), and subject to Defendant's reservation of rights, the attached invalidity **Charts 1-14** identify where in each item of prior art each element of each asserted claim is found for the asserted claims of the '993 or '967 patents. To the extent any cited prior art reference is deemed not to anticipate a claim as noted in the attached charts for failing to teach or suggest one or more limitations of that claim, the limitation would nonetheless have been inherent in the reference and/or obvious to one of ordinary skill in the art at the time of the

32

alleged invention(s), either alone or by the combination of the cited prior art references with any of the other listed references. Examples of certain combinations are outlined above. It should be understood that citations within each exhibit are exemplary, not exhaustive, and should not be construed as the sole evidentiary support in the reference.

Defendant's claim charts are subject to revision and amendment pursuant to Federal Rule of Civil Procedure 26(e) and Local Patent Rule 3-6 following discovery or the Court's construction of the claims at issue. To the extent that Defendant's contentions reflect constructions of claim limitations consistent with or implicit in Plaintiff's infringement contentions, no inference is intended nor should any be drawn that Defendant's agree with Plaintiff's claim constructions. Defendant expressly reserves the right to contest such claim constructions. Defendant offers such contentions solely in the alternative to any position they may ultimately take as to claim construction and non-infringement issues.

## V.     INVALIDITY FOR NON-COMPLIANCE WITH 35 U.S.C. § 112 PURSUANT TO LOCAL PATENT RULE 3-3(D)

Pursuant to Local Patent Rule 3-3(d), and subject to Defendant's reservation of rights, Defendant includes below the grounds on which Defendant contends the asserted claims of the '993 and '967 patents are invalid based on indefiniteness under 35 U.S.C. § 112, ¶ 2, lack of written description under 35 U.S.C. § 112, ¶ 1, and/or lack of enablement under 35 U.S.C. § 112, ¶ 1. As noted above, Plaintiff has not yet provided a claim construction for any of the terms and phrases that Defendant anticipates will be in dispute. Defendant, therefore, cannot provide a complete list of their § 112 defenses because Defendant does not know whether Plaintiff will proffer a construction for certain terms and phrases broader than, or inconsistent with, the construction that would be supportable by the disclosure set forth in the specification. Accordingly, Defendant reserves the right, to the extent permitted by the Court and the

applicable statutes and rules, to supplement, amend, and/or modify these § 112 invalidity contentions as discovery progresses.

The non-exclusive and non-limiting list of claim terms presently identified by Masabi within the '967 patent and the '993 patent are as follows:

- visual validation

- visual validation display object

- validation display object

- purchased electronic ticket

- previously purchased electronic ticket

- possesses (the previously purchased ticket)

- readily recognizable

- token

- the multiple usage of the term "a token" within the claims

- animation that operates in reaction

- "securing" a validation display object

- a determination that no such token has been stored

It should be understood that Bytemark has not provided sufficient infringement contentions from which their apparent interpretation of the claim terms could be inferred. Additionally, the present case has not progressed to the point that claim term definitions have been exchanged by either party.  Therefore, Masabi reserves the right to amend, supplement, and correct the aforementioned list of indefinite terms as the information becomes available.

## VI.    INVALIDITY UNDER FOR NONCOMPLIANCE UNDER 35 U.S.C. § 101

Masabi contends that the Asserted Claims lack patentable subject matter under 35 U.S.C. §101. For example, each of the Asserted Claims fail to satisfy the two-part analysis for statutory subject matter under 35 U.S.C. § in light of at least the US Supreme Court decision in *Alice Corporation Ply. Ltd. v. CLS Bank International* in that: 1) the Asserted Claims are directed to an abstract idea and 2) the Asserted Claims do not amount to significantly more than the abstract idea itself.  (134 S. Ct. 2347 (2014)).   Under part 1, the Asserted Claims are directed to an abstract idea including at least one of a fundamental economic practice, method of organizing human activity, an idea of itself, and a mathematical formula/relationship.   Under part 2, the Asserted Claims applying and limiting of the abstract idea does not amount to significantly more than the abstract idea itself.   Thus, the Asserted Claims are not patentable subject matter under 35 U.S.C. § 101, thereby making the Asserted Claims invalid.   Masabi reserves the right to supplement these positions in view of pleadings of the Plaintiff and claim construction findings that may be issued by the Court.

## VII.    INVALIDITY UNDER FOR NONCOMPLIANCE UNDER 35 U.S.C. § 102(B)

Plaintiff's 9/16/2016 Disclosure of Asserted Claims and Infringement Contentions at page 3 states:

**Local Patent Rule 3-2 (Document Production Accompanying Disclosure)
a. Sale/Offers for Sale of the Claimed Invention Prior to the
Application Dates of May 18, 2012 and May 23, 2013**

**March 21, 2011. (Bytemark-24-35).**

The asserted U.S. Patent No. 8,494,967 was filed as Appl. No. 13/475,881 on May 18,

2012. According to Plaintiff's own admission, the claimed invention was sold/offered for sale as

of March 21, 2011– which is more than a year before said application was filed (May 18, 2012).

35 U.S.C. §102(b) states:

> "A person shall be entitled to a patent unless…the invention was patented or described in
>
> a printed publication in this or a foreign country or in public use or on sale in this
>
> country, more than one year prior to the date of application for patent in the United
>
> States."

Here asserted U.S. Patent No. 8,494,967 is invalid on its face. Based on Bytemark's own

admission, the claimed invention was offered for sale/sold more than a year before the May 18,

2012 filing date.  Accordingly, this forms yet another basis as to why U.S. Patent No. 8,494,967

is invalid.

Asserted U.S. Patent No. 9,239,993 was filed as Appl. No. 13/901,243 on May 23, 2013.

According to Plaintiff's own admission, the claimed invention was sold/offered for sale as of

March 21, 2011– which is more than a year before said application was filed (May 23, 2013).

35 U.S.C. §102(b) states:

> "A person shall be entitled to a patent unless…the invention was patented or described in
>
> a printed publication in this or a foreign country or in public use or on sale in this
>
> country, more than one year prior to the date of application for patent in the United
>
> States."

Here asserted U.S. Patent No. 9,239,993 is invalid on its face. Based on Bytemark's own

admission, the claimed invention was offered for sale/sold more than a year before the May 23,

2013 filing date.  Accordingly, this forms yet another basis as to why U.S. Patent No. 9,239,993

is invalid.

Masabi reserves the right to further these arguments as the case develops.

## VIII.   DOCUMENT PRODUCTION UNDER LOCAL PATENT RULE 3-4

Pursuant to Local Patent Rule 3-4, and subject to Defendant's reservation of rights,

Defendant identifies documents produced as MAS000001- MAS001736).  Said documents are

being produced herewith.  Further, Masabi hereby makes its computer code available for

Bytremark's expert to inspect at Masabi's counsel's office at a mutually agreeable time, all in

accordance with the Protective Order that controls this case.  Moreover, additional prior art can

be found in the file history for the '993 or '967 patents. Defendant reserves the right, to the

extent permitted by the Court and the applicable statutes and rules, to rely on any such

references, whether or not identified above, to establish, among other things, the scope and

content of the prior art. Also, as noted above, Defendant's search for prior art references,

additional documentation, and/or corroborating evidence, including witness testimony

concerning prior art systems, is ongoing. Accordingly, Defendant reserves the right, to the extent

permitted by the Court and the applicable statutes and rules, to continue to supplement their

production as Defendant obtains additional prior art references, documentation, testimony and/or

corroborating evidence concerning invalidity during the course of discovery.

Dated:  October 11, 2016

Respectfully submitted,

FISHMAN STEWART PLLC

By:      /s/ Douglas P. LaLone (P45751)
         Douglas P. LaLone (P45751)
         Thomas E. Donahue (P57089)
         39533 Woodward Ave., Suite 140
         Bloomfield Hills, MI 48304
         Tel.: (248) 594-0600
         Fax: (248) 594-0610
         dlalone@fishstewip.com


         SHANNON, GRACEY, RATLIFF & MILLER LLP

By:      /s/ Kasia Brozynski (24036277)
         Kasia Brozynski
         Texas Bar No. 24036277
         Antonio S. Devora
         Texas State Bar No. 24074133
         Sorana G. Ban
         Texas State Bar No. 24061520
         901 Main Street, Suite 4600
         Dallas, Texas 75202
         (214) 245-3068 Telephone
         (214) 245-3097 Fax
         Email: kbrozynski@shannongracey.com
         adevora@shannongracey.com
         sban@shannongracey.com

         *Attorneys for Defendant Masabi Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that all known counsel of record who are deemed to have consented to

electronic service are being served with a copy of this document on this the 11th day of October,

2016.


By:     <u>/s/ Lisa M. Conner</u>
        <u>Lisa M. Conner</u>